102 P.3d 158 (2004)
124 Wash.App. 417
STATE of Washington, Respondent and Cross Appellant,
v.
Sarah Jane SMITH, Appellant and Cross Respondent.
No. 30357-4-II.
Court of Appeals of Washington, Division 2.
November 30, 2004.
*161 Wayne Clark Fricke, Attorney at Law, Tacoma, WA, for Appellant.
Kathleen Proctor, Pierce County Prosecuting Atty. Ofc., Tacoma, WA, for Respondent.
HOUGHTON, J.
Sarah Jane Smith appeals from her conviction of three second degree assaults, arguing various grounds for reversal. She also appeals from her firearm sentence enhancements. The State cross-appeals the trial court's exceptional sentence downward. We affirm.

FACTS
Smith and Anthony Smith had two daughters. When Smith and Anthony separated, they agreed to a parenting plan under which the girls spent some weeknights with Anthony.
On July 16, 2002, Smith called Anthony telling him that he could pick up the girls. Lorrielle Moore and Major Moriels accompanied Anthony. In the events that followed, Smith fired a single bullet into the vehicle occupied by Anthony, Moore, and Moriels.
The State charged Smith with three counts of first degree assault while armed with a deadly weapon.[1] The matter was tried to a jury. At trial, Smith and Anthony gave varying accounts of the circumstances leading to the shooting.
According to Anthony, after parking his car about 25 feet from Smith's house, he entered the home through the open garage door. There, he heard Smith say, "You better get out of my house or else I'm going to shoot you." Report of Proceedings (RP) at 150. Anthony testified that when he tried to introduce Moore and Moriels, Smith hit him with candles and a steel rod candle holder.
Anthony also testified that Moriels stood between him and Smith in an effort to defuse the situation, but no one struck Smith. Moore, Moriels, and Anthony tried to leave in Anthony's vehicle. As Anthony attempted to start the car, he looked up and saw Smith pointing a gun at him. He heard a gunshot and saw the front passenger window break.
According to Smith, she called Anthony to pick up the girls around 4:00 P.M. on July 16, but he did not arrive until after 6:00 P.M. When Smith came downstairs, she found Anthony and Moriels standing at the bottom of the stairs. When she asked who accompanied him, Anthony pushed her up the stairs, against the wall, and tossed a candle at her. She fought back by throwing a candle at him but Anthony grabbed her and hit her in the face. In fear, she ran upstairs.
Smith considered calling the police, but instead she retrieved her loaded handgun.[2] She testified that when she went outside and *162 pointed the gun at the ground, it just "went off." RP at 389. She denied aiming the gun or unlocking the safety switch.
Anthony, Moore, and Moriels all testified about the gunshot. Apparently Moore saw the gun and yelled, "Hurry up. She's got a gun," which caused Anthony to look up and see Smith standing on the porch aiming a gun at the car. RP at 154. Moriels saw Smith aiming something at the car. And Moore observed Smith move her finger as if to release the safety device and also watched her fire the gun.
The three further testified about the incident and their fear. Moore said that when she saw the gun, she was frightened and "freaked out" because she believed she might be shot when she saw the gun. RP at 232. Anthony saw and heard gunfire and observed the front passenger window shatter. The window glass landed on Moore and Moriels. Moriels said that he was afraid of being shot.
During cross-examination of Smith, the State repeatedly asked whether she had called the police in response to Anthony's actions. The trial court sustained Smith's objection to this line of questioning. Smith moved for a mistrial, arguing that the State improperly commented on her right to remain silent. The court denied the motion.
At the close of evidence, the court instructed the jury on first and second degree assault. Instruction 6 stated, "A person commits the crime of assault in the first degree when, with intent to inflict great bodily harm, he or she assaults another with a firearm." Clerk's Papers (CP) at 141. Instruction 16 stated, "A person commits the crime of Assault in the Second Degree when under circumstances not amounting to Assault in the First Degree he or she assaults another with a deadly weapon." CP at 151. The court further provided the jury with three definitions of assault and a self-defense instruction.
During rebuttal, the prosecutor argued that "a lawful society is also one where people cannot use whatever means of force under whatever circumstances and then come before you and say subjectively in my mind I thought it was appropriate. That's not a lawful society." RP at 477. The court sustained Smith's objection to the comment.
The jury convicted Smith of three counts of the lesser crime of second degree assault. In a special verdict, the jury found that the deadly weapon enhancement applied to each count.
Finding that Smith had a long history of being victimized by Anthony, that on the day of the incident Smith feared Anthony, and that the multiple offense policy of RCW 9.94A.589 resulted in a clearly excessive sentence in light of these circumstances, the trial court imposed an exceptional sentence downward of one day for each assault count, running concurrently. The trial court further imposed three consecutive 36-month firearm sentence enhancements, running consecutively to the one-day concurrent sentences and to one another.
Smith appeals her conviction and firearm enhancement sentence. The State cross-appeals the exceptional sentence downward.

ANALYSIS

Alternative Means and Sufficiency of the Evidence
Smith contends that insufficient evidence supports her convictions. She argues that her case involves alternative means and requires a unanimous guilty verdict on each count unless substantial evidence supports each alternative means. She further argues that where no physical injury occurred, the State must prove that she intended to inflict harm or cause reasonable fear of bodily injury as to each victim and that each victim experienced fear of bodily harm before, and not after, the assault.
Sufficient evidence supports a conviction when, viewed in the light most favorable to the State, it permits any rational fact finder to establish the essential elements of the crime beyond a reasonable doubt. State v. Green, 94 Wash.2d 216, 221, 616 P.2d 628 (1980). We accord circumstantial and direct evidence equal weight. State v. Delmarter, 94 Wash.2d 634, 638, 618 P.2d 99 (1980). We reserve credibility determinations for the fact finder; we need not be convinced of *163 Smith's guilt beyond a reasonable doubt, but only that substantial evidence supports the State's case. State v. Salinas, 119 Wash.2d 192, 201, 829 P.2d 1068 (1992); State v. Camarillo, 115 Wash.2d 60, 71, 794 P.2d 850 (1990).
Our constitutions guarantee a criminal defendant the right to an expressly unanimous jury verdict. U.S. CONST. amend. VI; WASH. CONST. art. I, § 22; State v. Kitchen, 110 Wash.2d 403, 409, 756 P.2d 105 (1988). In an alternative means case, "the evidence includes only one event, even though it discloses alternative means by which the defendant may have participated in that event." State v. Hanson, 59 Wash.App. 651, 657 n. 7, 800 P.2d 1124 (1990); Kitchen, 110 Wash.2d at 410, 756 P.2d 105.
Smith argues that because the court gave three definitions of assault,[3] it created an alternative means case and insufficient evidence supports Smith's convictions under the three alternatives. We disagree that this is an alternative means case.[4]
Instruction 7 defined various ways of committing an assault. Because definitional instructions do not create alternative means of committing the crime, necessitating jury unanimity, Smith's argument that this is an alternative means case fails.[5]State v. Laico, 97 Wash.App. 759, 762, 987 P.2d 638 (1999); State v. Strohm, 75 Wash.App. 301, 309, 879 P.2d 962 (1994), review denied, 126 Wash.2d 1002, 891 P.2d 37 (1995).
Smith intertwines her alternative means and sufficiency arguments and further asserts that the State did not prove that she intended to shoot the gun or that each victim suffered fear and apprehension.[6] She argues that no evidence shows that she intended to discharge the gun. We disagree. The jury could reasonably infer from at least Moore's testimony that Smith intended to shoot when she aimed the gun and moved her hand as if to release the safety device.
Smith further argues that Anthony, Moore, and Moriels did not suffer fear and apprehension. Again, we disagree. Anthony, Moore, and Moriels each saw the gun in Smith's hands and testified that they were "upset," "scared," "freaked out," and "frightened." RP at 158, 232, 316. Moore ducked when she saw Smith pull something on the gun and nothing happened. Then she ducked a second time when the gun fired and shattered the vehicle window. And when Anthony saw the gun in Smith's hands, he *164 tried to drive away. But before he could, the bullet pierced the window and shattered the glass. From this, the jury could reasonably infer that the three experienced fear and apprehension before Smith fired the gun. Smith's sufficiency argument fails.

Mistrial Motion
Next, Smith argues that the trial court erred when it did not grant her a mistrial. She asserts that the State inappropriately commented on her constitutional right to remain silent when it elicited testimony that she did not call the police after she claimed that Anthony and Moriels assaulted her.
We review the denial of a mistrial motion for abuse of discretion, giving great deference to the trial court because it is in the best position to discern prejudice. State v. Lewis, 130 Wash.2d 700, 707, 927 P.2d 235 (1996). A trial court abuses its discretion when it bases its decision on untenable grounds or reasons. State v. Stenson, 132 Wash.2d 668, 701, 940 P.2d 1239 (1997), cert. denied, 523 U.S. 1008, 118 S.Ct. 1193, 140 L.Ed.2d 323 (1998). A mistrial motion should be granted only when a "defendant has been so prejudiced that nothing short of a new trial can insure that the defendant will be tried fairly." Lewis, 130 Wash.2d at 707, 927 P.2d 235.
The law prohibits the State from commenting on a defendant's silence as substantive evidence of guilt. State v. Romero, 113 Wash.App. 779, 787, 54 P.3d 1255 (2002) (citing Lewis, 130 Wash.2d at 705, 927 P.2d 235).
Here, the State repeatedly asked Smith:
Q: You didn't try to call the police that night, correct?
A: I didn't, no.
RP at 408.
Q: ... [B]y your own testimony to the jury, you've already been punched, you've been pushed, you've been threatened?
....
Q: You don't try to call the police, correct?
A: Correct.
RP at 409.
Q: You could have run back upstairs and grabbed one of the phones, correct?
A: I could have, but the last time I tried that, he took both... phones and popped them in two.
RP at 408.
Finally, Smith answered, "Correct" when the State asked: "You don't make any effort to call the police at that point, correct?" RP at 410. When the State then asked, "When the police actually come and arrest you, you never make a complaint about," the trial court sustained Smith's objection. RP at 410. On re-direct examination, defense counsel asked Smith to clarify why she did not tell the police that Anthony and Moriels assaulted her and she replied:
I didn't call the police because I was afraid if I got on the phone, that would give Anthony enough time to get to me, and last time when I tried to call, he took the phone from me, popped it in half, and beat me up. And he told me when the police got there they wouldn't find anything but my dead body because the consequences for him would be the same, because he already had a restraining order and he is already in trouble.
RP at 411-12.
Smith moved for a mistrial, arguing that the State commented on her right to remain silent. The State responded that it sought to evaluate the extent of her pain, noting that if she had been badly assaulted, she would have told the police.
In ruling, the trial court noted that the State's questioning was on a "fine line" but that it had sustained Smith's objection and the State then stopped its inquiry. RP at 413. The trial court found that Smith suffered no prejudice and denied her motion for a mistrial.
The trial court did not abuse its broad discretion here in discerning no prejudice where it had previously sustained Smith's objection and the State stopped its line of questioning. Smith's argument fails.

*165 Prosecutorial Misconduct
Smith further contends that the prosecutor committed misconduct during closing argument. She asserts that the prosecutor improperly asked the jury to convict Smith in order "to send a message," App. Br. at 44, about a lawless society when he said, "But a lawful society is also one where people cannot use whatever means of force under whatever circumstances and then come before you and say subjectively in my mind I though it was appropriate. That's not a lawful society." RP at 477.
To prevail on a prosecutorial misconduct argument, Smith must show that the State's comments prejudiced her. State v. Finch, 137 Wash.2d 792, 839, 975 P.2d 967, cert. denied, 528 U.S. 922, 120 S.Ct. 285, 145 L.Ed.2d 239 (1999). In asking the jury to act as the "conscience of the community," the State must not make an argument "`specifically designed to inflame the jury.'" Finch, 137 Wash.2d at 842, 975 P.2d 967 (quoting United States v. Lester, 749 F.2d 1288, 1301 (9th Cir.1984)).
Here, Smith takes the State's comment out of context from its rebuttal argument. A full review shows that the State did not seek to inflame the jury:
Ladies and Gentlemen, there's a couple of things that were brought up on [defense counsel's] closing argument I just want to address briefly.
One of the essential things when the State thinks about the case, as the prosecutor sits here trying to go through all the evidence, some of the essential questions that come to mind, is what type of society do we live in. Do we live in a lawful society or a lawless society?
Again, obviously, Anthony Smith is someone who has violated the law in the past. Anthony Smith, again, doesn't come with clean hands. Does that mean that Major and Lorielle, if you believe what they have to say, should be subjected to the use of deadly force? No.
A lawful society would be one where, obviously, Anthony Smith has not committed his prior acts. A lawful society is one where Anthony Smith is one who will be respectful of that no contact order as he is expected to do so.
But a lawful society is also one where people cannot use whatever means of force under whatever circumstances and then come before you and say subjectively in my mind I thought it was appropriate. That's not a lawful society.
RP at 476-77.
In reviewing the rebuttal argument more fully, it is apparent that the State did not ask the jury to send a message to convict Smith because of her vigilante-like behavior but, rather, it acknowledged Anthony's history of violating his no contact order protecting Smith. The State's remarks referred to Anthony's history, while recognizing that he was the victim in the case before the jury. In doing so, the State asked the jury to act as the conscience of the community, Smith's argument fails.

Double Jeopardy
Smith further contends that her multiple convictions based on the same act violate double jeopardy protections. She asserts that we should merge her convictions because there is ambiguity as to what the legislature intended as the "appropriate unit of prosecution." App. Br. at 29. She argues that the correct unit of prosecution is the "single act [of firing the firearm], with [her] single state of mind." App. Br. at 29.
"[W]hen a defendant is convicted of multiple violations of the same statute, the double jeopardy question focuses on what `unit of prosecution' the Legislature intends as the punishable act under the statute." State v. Westling, 145 Wash.2d 607, 610, 40 P.3d 669 (2002). If the legislature does not specify the proper "unit of prosecution," then we apply the rule of lenity and we construe any ambiguity in favor of the defendant. In the Matter of the Personal Restraint Petition of Davis, 142 Wash.2d 165, 172, 12 P.3d 603 (2000).
A defendant can only be convicted once if he or she committed one "unit of prosecution." State v. Adel, 136 Wash.2d 629, 634, 965 P.2d 1072 (1998). In reviewing *166 RCW 9A.36.021(1)(c),[7] we note that one is guilty of second degree assault when under circumstances not amounting to assault in the first degree, one assaults another with a deadly weapon. Therefore, assaulting another with a deadly weapon comprises the criminal activity measured by the "unit of prosecution."
RCW 9A.36.021(1)(c) clearly specifies that one commits second degree assault whenever one assaults another with a deadly weapon. Thus, although Smith fired only one bullet into the vehicle, she assaulted three individuals, resulting in three units of prosecution, not one as Smith contends. See State v. Wilson, 125 Wash.2d 212, 220, 883 P.2d 320 (1994) (where the shots fired by the defendant missed two intended victims but struck two unintended ones, the defendant committed four assaults, involving four victims, and these assaults constituted four separate and distinct criminal acts-one act for each victim).
Next, we address the issue of whether Smith's crimes constituted the same criminal conduct for the purposes of RCW 9.94A.589(1)(a). "`Same criminal conduct' means two or more crimes that require the same criminal intent, are committed at the same time and place, and involve the same victim." RCW 9.94A.589(1)(a); State v. Tili, 139 Wash.2d 107, 123, 985 P.2d 365 (1999), aff'd, 148 Wash.2d 350, 60 P.3d 1192 (2003). The absence of any one of the three elements prevents a finding of same criminal conduct. State v. Lessley, 118 Wash.2d 773, 778, 827 P.2d 996 (1992). Thus, same criminal conduct cannot occur where there are multiple victims. Lessley, 118 Wash.2d at 777, 827 P.2d 996 (citing State v. Dunaway, 109 Wash.2d 207, 215, 743 P.2d 1237 (1987)).
We review a trial court's determination about same criminal conduct for abuse of discretion or misapplication of law. State v. Larry, 108 Wash.App. 894, 915, 34 P.3d 241 (2001), review denied, 146 Wash.2d 1022, 52 P.3d 521 (2002) (citing Tili, 139 Wash.2d at 122, 985 P.2d 365).
Here, the court made no explicit findings about the three prongs of same criminal conduct. Nevertheless, the facts in the record show that the crimes did not involve the same victim. Thus, the trial court did not err when it counted the assaults against three victims as separate offenses.

Sentencing

Firearm Sentence Enhancement
Smith further contends that the trial court erred in not merging her three firearm enhancements because "[RCW 9.94A.510(3)(b)] indicates that one firearm enhancement attaches to a single, undirected discharge of a firearm." App. Br. at 36. Smith asserts that "a rational reading of the firearm provision explains that it is the status of being armed during a criminal episode that decides a weapon enhancement" not the number of victims. App. Br. at 36. And because only one bullet was fired into the vehicle, Smith asserts that the proper punishment is "either a single firearm enhancement, or, in the alternative, concurrent enhancements." App. Br. at 38.
We interpret and construe statutes to avoid rendering a provision meaningless or in a way that allows an absurd result. State v. Ritts, 94 Wash.App. 784, 787-88, 973 P.2d 493 (1999). We do not interpret unambiguous statutory language. Ritts, 94 Wash.App. at 787-88, 973 P.2d 493.
Former RCW 9.94A.510 (2002) provides:
(3) The following additional times shall be added to the standard sentence range for felony crimes committed after July 23, 1995, if the offender or an accomplice was armed with a firearm as defined in RCW 9.41.010 and the offender is being sentenced for one of the crimes listed in this subsection as eligible for any firearm enhancements based on the classification of the completed felony crime. If the offender is being sentenced for more than one offense, the firearm enhancement or enhancements must be added to the total period of confinement for all offenses, regardless of which underlying offense is subject to a firearm enhancement....
....

*167 (b) Three years for any felony defined under any law as a class B felony or with a statutory maximum sentence of ten years, or both, and not covered under (f) of this subsection.
The trial court retains no discretion on mandatory firearm and deadly weapon enhancements.[8]State v. DeSantiago, 149 Wash.2d 402, 418, 68 P.3d 1065 (2003).
The jury convicted Smith of three counts of second degree assault against three different victims, each with a deadly weapon enhancement. Thus, the trial court did not err in refusing to merge the convictions for sentencing. State v. Vladovic, 99 Wash.2d 413, 421, 662 P.2d 853 (1983) (where the two crimes have independent purposes or effects, a defendant may be convicted of and punished separately for each).
In the alternative, Smith argues that the enhancements must run concurrently. Our Supreme Court recently held otherwise in DeSantiago."The plain language of RCW 9.94A.510 not only anticipates the imposition of multiple enhancements under a single offense but clearly insists that all firearm and deadly weapon enhancements ... must be served consecutively."[9]DeSantiago, 149 Wash.2d at 418, 68 P.3d 1065. Smith's argument fails.

State's Cross-Appeal
In its cross-appeal, the State argues that the trial court erred in imposing an exceptional sentence downward. The State asserts that substantial evidence does not support the trial court's findings, the findings do not support the conclusions, and the sentence was clearly too lenient.
The Sentencing Reform Act of 1981(SRA) accords the trial court discretion to depart from the SRA's standard felony sentencing ranges, if the court finds "substantial and compelling reasons" to justify the exceptional sentence and enters appropriate findings of fact and conclusions of law. RCW 9.94A.505; State v. Alexander, 125 Wash.2d 717, 722, 888 P.2d 1169 (1995).[10] We review the imposition of an exceptional sentence under RCW 9.94A.585. State v. Ferguson, 142 Wash.2d 631, 646, 15 P.3d 1271 (2001).[11] On review, we decide (1) whether substantial evidence[12] supports the sentencing judge's reasons;[13] (2) whether the reasons, as a matter of law, justify a departure from the standard range;[14] and (3) whether the court abused its discretion in sentencing the defendant too excessively or leniently.[15]Ferguson, 142 Wash.2d at 646, 15 P.3d 1271. When the court identifies "more than one justification for an exceptional sentence and each ground is an independent justification, we may affirm the sentence if one of the grounds is valid." State v. Zatkovich, 113 Wash.App. 70, 78, 52 P.3d 36 (2002).
Here, Smith's standard range sentence would be 15-20 months on each count, running concurrently. But the trial court imposed a one-day sentence on each conviction, running concurrently.[16] Before doing so, the court found:

*168 II. That the evidence presented at trial by both parties demonstrates that there was a confrontation between Anthony and Sarah Smith. Ms. Smith had a long history of being victimized by Anthony Smith, and that on the day of the incident she was in fear of Mr. Smith. That although the jury did not find for the defendant on self-defense, the evidence demonstrated that it was an "incomplete defense".
III. That the conduct giving rise to the three convictions involved a single act against three individuals as opposed to three separate acts occurring at separate times.
IV. That in order to accomplish the purposes behind the SRA, an exceptional sentence is appropriate in this case.
CP at 231.
And the court concluded:
I. That there are substantial and compelling reasons justifying an exceptional sentence outside the standard range.
II. An exceptional sentence is warranted pursuant to RCW 9.94A.535 (1)(a)[17] and State v. Whitfield, 99 Wash.App. 331, 994 P.2d 222 (1999)[18] based on the history of domestic violence.
III. That pursuant to RCW 9.94A.535 (1)(g),[19] the multiple offense policy of RCW 9.94A.589 results in a presumptive sentence that is clearly excessive in light of the purposes of this chapter.
....
V. That pursuant to State v. Brown, 139 Wash.2d 20, 983 P.2d 608 (1999) the Court does not have the authority to depart from the sentencing enhancement. Therefore, the defendant is sentenced to 36 months on each enhancement to be served consecutively for a total of 108 months.
CP at 231-32.
The State argues that substantial evidence does not support the trial court's findings. The State asserts that record does not contain evidence of a long history of Anthony's domestic violence on Smith or a failed self-defense as to all three victims.
We first note that the State does not argue whether the evidence supports the trial court's finding that the conduct involved a single act against three individuals rather than three separate acts occurring at separate times. Here, the record clearly shows that the three convictions arose from Anthony, Moore, and Moriels being in the vehicle when the one bullet pierced and shattered the window. Substantial evidence supports the trial court's finding and it is not clearly erroneous.[20]
We must next determine whether the trial court erred in using this reason to depart from the standard range. The trial court reserves broad discretion to decrease a sentence if "[t]he operation of the multiple offense policy of RCW 9.94A.589 results in a presumptive sentence that is clearly excessive in light of the [SRA's] purpose ..., as expressed in RCW 9.94A.010." RCW 9.94A.535(1)(g). It properly exercised that discretion here.
Finally, we must decide whether the court abused its discretion in sentencing the defendant too leniently. We cannot say that no other judge, when faced with these facts, would impose this sentence. Therefore, we hold the trial court did not abuse its discretion.
Affirmed.
I concur: HUNT, J.
*169 QUINN-BRINTNALL, C.J. (concurring in part and dissenting in part).
I concur with the majority's analysis and its decision affirming a jury verdict finding Smith guilty of three counts of second degree assault with a firearm. But because I do not agree that imposing a sentence of one day in jail where Smith fired a gun into a car with a 12-year-old passenger, causing the child to be hit with shattered window glass, I dissent from that portion of the opinion affirming the sentence.
On July 16, 2002, Anthony, Smith's estranged husband; Lorrielle Moore, the 12-year-old daughter of Anthony's girlfriend; and Major Moriels, an adult male friend, went to Smith's home to pick up Anthony and Smith's two children, Camille and Kayla. Moriels unsuccessfully tried to defuse an altercation between Smith and Anthony. Smith threatened to shoot Anthony and went upstairs, where she retrieved her loaded semi-automatic handgun. This gun requires a magazine to be inserted into the base of the handle. Once the magazine is loaded, the shooter must "[rack] the slide" to cause the cartridge to drop into the firing chamber. RP (Apr. 17, 2003) at 269. Once in place, the shooter must manually disengage the safety on the left side of the gun to fire it.
Afraid of Smith's threat to shoot them, the three ran to the car. Anthony got in the driver's sear, Moriels sat in the front passenger seat, and Moore sat in the back passenger seat. Moore yelled, "Hurry up. She's got a gun." RP (Apr. 16, 2003). Anthony saw Smith standing on the porch aiming the gun at his car. Moriels saw Smith aiming something at the car. Moore saw Smith aim at the car and move her finger as if she was taking off the safety switch and then fire the gun. Smith claimed the gun just "went off" and that she did not intend to fire into the car. RP (Apr. 17, 2003) at 389.
At the time Smith shot into the car, Moore was 12 years old. Moore testified that she "freak[ed] out," feared that she might be shot, and she did not understand why Smith was aiming at them. RP (Apr. 16, 2003) at 232. The gun fired. A bullet went through the front passenger window. Glass from the shattered window sprayed Moriels and Moore.
The majority correctly analyzes Smith's allegations of error, holding that the evidence was sufficient to support the jury's verdict, that the court's definitional instruction did not create an alternate means of committing the offense, that Smith was not entitled to a mistrial or a new trial, and that under the proper unit of prosecution analysis, the State correctly charged her with three counts of assault even though Smith only fired one bullet.
But despite the majority's acknowledgment that Smith assaulted three people and thus committed three counts of second degree assault, it upholds the trial court's exceptional sentence downward that effectively negates the proper unit of prosecution by merging the three assaults and upholds applying mitigation findings proper as to only one count to all three. In my view, this was error.
A court may impose a sentence below the standard range for reasons that are "substantial and compelling." Former RCW 9.94A.535 (2002); State v. Fowler, 145 Wash.2d 400, 404, 38 P.3d 335 (2002). The SRA contains a list of mitigating factors "which the court may consider in the exercise of its discretion to impose an exceptional sentence." Former RCW 9.94A.535. Although this list is not exclusive, any such reason must relate to the crime for which the defendant is being sentenced and make it less egregious, distinguishing the defendant's crime from others in the same category. Fowler, 145 Wash.2d at 404-05, 38 P.3d 335. In reviewing an exceptional sentence downward, we examine whether (1) under a clearly erroneous standard, the reasons supplied by the sentencing court are supported in the record that was before the judge; (2) under a de novo standard, those reasons justify a sentence outside the standard range; and (3) under an abuse of discretion standard, the sentence imposed was clearly too lenient. See State v. Van Buren, ___ Wash.App. ___, 98 P.3d 1235, 1245 (2004). See also RCW 9.94A.585(4); Fowler, 145 Wash.2d at 405-06, 38 P.3d 335.
*170 The trial court based its exceptional sentence in part on a mitigating factor that, if applicable, applies only to the assault of one victim, Anthony. Under RCW 9.94A.535(1)(a), a mitigating circumstance exists where, to a significant degree, the victim was an initiator, willing participant, aggressor or provoker of the incident. Assuming arguendo that the record sufficiently established that Anthony's conduct initiated or provoked the altercation with his estranged wife, there is no evidence that the conduct of Moriels or the child, Moore, did so. This reason for imposing an exceptional sentence for the assaults on Moriels and Moore is not supported by the record and does not justify imposing a sentence below the standard range on Counts II and III.
The trial court concluded that under the multiple offense policy the presumptive sentence is "clearly excessive in light of the purposes of this chapter." CP at 232 (Conclusion of Law III). As the majority notes, Smith's standard range sentence for the three assaults was 15-20 months to be served concurrently. In my view, 15 months cannot be an excessive sentence for firing a bullet into the front passenger window of a car with a 12-year-old bystander seated inches away in the vehicle's rear passenger seat.
The trial judge initially resisted imposing firearm enhancements. The State cited State v. Brown, 139 Wash.2d 20, 983 P.2d 608 (1999), and the trial court properly determined that it lacked authority to depart from the firearm sentence enhancements mandated by the legislature. But, in my view, it also lacked authority, in the absence of valid mitigating factors on the counts for which Smith was being sentenced, to refuse to impose a standard range sentence when sentencing Smith for assaulting Moore and Moriels. Thus, I dissent from that portion of the opinion affirming the trial court's imposition of an exceptional sentence on Counts II and III.
NOTES
[1] In violation of RCW 9A.36.011(1)(a).
[2] Smith testified that she bought the handgun after Anthony's brother assaulted her. She further testified that the police arrested Anthony for assaulting her in 1995 or 1996, but that the charges were later dropped. Smith also said the police arrested Anthony and the court imposed a restraining order on him after he assaulted her in February 2001.
[3] Instruction 7 provided:

An assault is an intentional touching, striking, cutting or shooting of another person, with unlawful force, that is harmful or offensive regardless of whether any physical injury is done to the person. A touching, striking, cutting, or shooting is offensive, if the touching, striking cutting, or shooting would offend an ordinary person who is not unduly sensitive.
An assault is also an act, with unlawful force, done with intent to inflict bodily injury upon another, tending, but failing to accomplish it and accompanied with the apparent present ability to inflict the bodily injury if not prevented. It is not necessary that bodily injury be inflicted.
An assault is also an act, with unlawful force, done with the intent to create in another apprehension and fear of bodily injury, and which in fact creates in another a reasonable apprehension and imminent fear of bodily injury even though the actor did not actually intend to inflict bodily injury.
CP at 142.
[4] In State v. Laico, 97 Wash.App. 759, 762, 987 P.2d 638 (1999), Division One held "`that definition statutes do not create additional alternative means, "means within means", of committing an offense.'" (citing State v. Strohm, 75 Wash.App. 301, 879 P.2d 962 (1994)). But in State v. Nicholson, 119 Wash.App. 855, 860, 84 P.3d 877 (2003), without disavowing its Laico decision, Division One held that the three assault definitions create alternative means of committing the crime. We agree with Laico and decline to follow Nicholson.
[5] Smith further contends that the trial court erred in instructing the jury on alternative means of committing assault because the evidence did not support it. Because we disagree that this is an alternative means case, we do not address this argument further.
[6] Smith relies on State v. Bland, 71 Wash.App. 345, 860 P.2d 1046 (1993). But the facts in Bland differ from those here. The Bland court reversed where the trial court instructed the jury on assault through an unlawful touching or fear and apprehension when the defendant fired a wild shot that strewed broken glass on a sleeping victim. The court held that insufficient evidence supported finding fear or apprehension in a sleeping victim.
[7] We look only at second degree assault here.
[8] Smith also urges us to overrule our Supreme Court's decision in State v. Brown, 139 Wash.2d 20, 983 P.2d 608 (1999). As an intermediate appellate court, we do not have the authority to overrule the Supreme Court and we decline Smith's invitation. State v. Hughes, 118 Wash.App. 713, 730 n. 12, 77 P.3d 681 (2003), review denied, 151 Wash.2d 1039, 95 P.3d 758 (2004).
[9] Our Supreme Court had not issued DeSantiago when Smith filed her briefs in this case.
[10] RCW 9.94A.120 cited in Alexander was recodified as RCW 9.94A.505.
[11] RCW 9.94A.210 cited in Ferguson was recodified as RCW 9.94A.585.
[12] Substantial evidence is that quantum of evidence sufficient to persuade a rational, fair-minded person of its truth. City of Tacoma v. William Rogers Co., 148 Wash.2d 169, 191, 60 P.3d 79 (2002).
[13] We apply the clearly erroneous standard to this review. Ferguson, 142 Wash.2d at 646, 15 P.3d 1271.
[14] We engage in a de novo review. Ferguson, 142 Wash.2d at 646, 15 P.3d 1271.
[15] We apply an abuse of discretion standard to this review. Ferguson, 142 Wash.2d at 646, 15 P.3d 1271.
[16] The court imposed consecutive firearm enhancements.
[17] RCW 9.94A.535(1)(a) provides that mitigating circumstances include those where "[t]o a significant degree, the victim was an initiator, willing participant, aggressor, or provoker of the incident."
[18] Smith raised self-defense and the trial court instructed the jury on it. Failed defenses may constitute mitigating factors. State v. Whitfield, 99 Wash.App. 331, 336-37, 994 P.2d 222 (1999).
[19] RCW 9.94A.535(1)(g) provides that a mitigating circumstance includes that "[t]he operation of the multiple offense policy of RCW 9.94A.589 results in a presumptive sentence that is clearly excessive in light of the purpose of this chapter, as expressed in RCW 9.94A.010."
[20] We may still affirm where any one of the court's justifications is appropriate. Zatkovich, 113 Wash.App. at 78, 52 P.3d 36.