FILED
COURT OF APPEALS
DIVISION II

2013 JUL -2 AM 9: 06

STATE OF WASHINGTON

BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 42734-6-II |
| Respondent, | |
| v. | |
| SCOTT EUGENE COLLINS, | UNPUBLISHED OPINION |
| Appellant. | |

HUNT, P. J. — Scott Eugene Collins appeals his jury trial convictions for possession of a stolen vehicle and possession of methamphetamine. He argues that (1) the trial court erred in denying his motion for a mistrial after a juror notified the trial court during the State's case-in-chief that he was acquainted with a potential State rebuttal witnesses; (2) the trial court erred in refusing to give his proposed jury instruction on credibility; and (3) cumulative error deprived him of a fair trial. In his Statement of Additional Grounds (SAG), Collins challenges one of the jury's implied findings and raises other issues that involve matters outside the trial record. We affirm.

## FACTS

### I. POSSESSION OF STOLEN VEHICLE AND METHAMPHETAMINE

Frank Medeiros is a long-haul truck driver. He owns a white Chevy Silverado truck and lives alone with two pug dogs in Kelso, Washington. He has a friend watch his house and check on his dogs twice daily while he is away from home for extended periods.

At 7:00 AM on the morning of November 18, 2010, Medeiros left Vancouver, Washington, to haul a load to Maryland. Expecting to be away until December 5, he arranged for his friend Earl Mitchell to watch the house and to care for the dogs. Before leaving home, Medeiros (1) placed his keychain on top of an eight-foot bookshelf in the living room where no one could see it; and (2) left his truck in the driveway, with the truck's title, registration, and insurance documents inside the glove box. Affixed to his keychain were keys to his Chevy Silverado truck, the post office, and his front door. There was no damage to the truck's ignition switch, steering column, or windows at the time.

When Mitchell first checked on Medeiros' home and dogs the next morning, the truck was still in the driveway; there was no damage to the house, and nothing appeared missing. But when Mitchell returned that afternoon, Medeiros' truck was no longer in the driveway, the front door to the house was open, the dogs were loose, and a basement window was broken. The inside of the house was "a mess": Papers had been removed from Medeiros' filing cabinet and thrown all over, and it looked like someone had been rummaging through the closet downstairs. 1 Verbatim Report of Proceedings (VRP) at 146. Mitchell notified Medeiros and reported the truck missing to the police.

At 2:20 AM on November 22, Officer Michael Berndt saw Scott Eugene Collins driving a white Chevy Silverado truck matching the description of the truck Mitchell had reported missing; a male passenger was with Collins. Berndt pulled behind the truck, saw several personal items in the truck's bed (e.g., bed frame, blankets, etc.), confirmed with dispatch that the truck was stolen, waited for backup, and then pulled the truck over. Berndt arrested Collins and his passenger. Searching Collins incident to arrest, Berndt found a bag with white crystal

2

substance in Collins' pocket. This substance later tested positive for methamphetamine. Berndt also apparently seized a keychain with three keys. The police towed the truck to the police station, conducted an inventory search, and found a methamphetamine pipe under the driver's seat.

Medeiros returned two weeks later and retrieved his truck and his keychain from impound. The truck's ignition was damaged, and the key was difficult to turn. The truck's windows were also damaged and looked as though someone had tried to pry them open with a screwdriver. Medeiros also discovered several articles in the truck's bed that did not belong to him, including a bed frame, a fifth wheel hitch, bolt cutters, clothes, and a backpack with tools used for picking locks.

## II. PROCEDURE

The State charged Collins with possession of a stolen vehicle and possession of methamphetamine. The State's witnesses testified to the facts previously described. In addition, Medeiros testified that he had never met Collins or given him permission to possess his truck.

### A. Motion for Mistrial

On cross examination, Collins asked Mitchell if he remembered speaking with a "Deputy Hammer" from the Sheriff's Office. 1 VRP at 147. Hammer had not previously testified; he was a potential rebuttal witness, although his name had not been included on the witness list that had been read to the jury at the beginning of the case. When Mitchell responded, "Yes," Collins questioned Mitchell about inconsistencies between his trial testimony and his earlier statements

to Hammer about the time of day when he (Mitchell) had first discovered Medeiros' truck was missing.[1] 1 VRP at 147.

During the next recess, a juror informed the bailiff that he possibly knew Deputy Hammer. Outside of the presence of the other jurors the trial court questioned this juror about his relationship with Hammer. The juror responded that he had "[grown] up" with Hammer and that he had seen him "in passing" twice in the last year when Hammer visited his (Hammer's) parents' house. 1 VRP at 152. The juror testified that he waived to Hammer when he saw him, but that he (the juror) had not associated with Hammer in about 15 years.

The trial court asked the juror whether his acquaintance with Hammer would impair his ability to evaluate Hammer's testimony the same as any other witness; the juror responded, "Not at all." 1 VRP at 153. Collins asked the juror whether he had any concerns about "cutting [Hammer] a break" if his testimony conflicted with other witnesses' testimony; the juror again responded that his acquaintance with Hammer would not affect his ability to be impartial. 1 VRP at 153. Satisfied with the juror's responses, the trial court allowed the bailiff to return the juror to the jury room.

Collins moved for a mistrial based on the juror's familiarity with Hammer. The trial court denied the motion, noting that the juror's relationship with Hammer was "pretty ancient

---

[1] Mitchell had testified on direct exam that he had gone to Medeiros' home a second time on November 19, between 2:30 and 3:30 PM. On cross examination, Collins' counsel suggested that Mitchell had told Deputy Hammer that he did not return to the home a second time until 4:00 PM and that this is when he had discovered the truck was missing and the home's basement window was broken.

No. 42734-6-II

lineage" and that the juror had indicated that he would not have a problem evaluating Hammer's testimony the same as other witnesses.[2]  1 VRP at 156.

### B. Collins' Testimony

Collins testified that (1) he had several earlier convictions for theft- and possession-related crimes;[3] (2) while driving Medeiros' truck on November 22, Berndt had pulled him over; (3) at that time, he (Collins) had a key chain with "three keys" on him and methamphetamine in his possession; (4) there was no damage to the truck's ignition and its key was not difficult to turn; (5) he had "purchased" the truck and a fifth wheel for $1,500 from a man, whom he thought was Medeiros, at an AM/PM station in Kelso and did not know the truck was stolen; and (6) he had met this man "twice" before finalizing the sale on November 19, but the man had never signed off on the title to release his interest.  2 VRP at 187, 199.

The State cross-examined Collins about inconsistencies between his testimony and the stories he had told Berndt and Hammer about how he had come into possession of the truck:  At the time of his arrest, Collins had told Berndt that he had purchased the truck on November 15 from a man, whom he believed was Medeiros and had met at the AM/PM station; but Collins had told Hammer that he had been introduced to Medeiros though his business partner/"boss," Josh

---

[2] The trial court further noted that if the juror gave Hammer's testimony any favorable treatment, it would likely be helpful to Collins' defense.

[3] More specifically, Collins admitted that he had previously been convicted of (1) second degree burglary, (2) second degree theft, (3) first degree trafficking in stolen property, (4) financial fraud, (5) three counts of second degree identity theft, (6) forgery, (7) three counts of second degree possession of stolen property, and (8) making a false statement to a public servant.

Evans, and that he had purchased the truck on November 19 when Medeiros was out of town. 2 VRP at 210.

On rebuttal, the State called Berndt and Hammer, who corroborated Collins' inconsistent statements.

## C. Jury Instructions

Collins proposed the following credibility instruction: "Whether or not the defendant was in possession of drugs should not be used by you to determine his credibility." Clerk's Papers (CP) at 14. Collins took exception to the trial court's refusal to give this instruction, arguing that under *State v. Hardy*, 133 Wn.2d 701, 946 P.2d 1175 (1997), and ER 609(a)(1), a jury could not use evidence of a defendant's prior drug possession convictions to evaluate his credibility. The trial court agreed that this proposed instruction was a "correct statement of the law, at least insofar as evidence issues are concerned." 2 VRP at 218. But the trial court refused to give the instruction under the facts of Collins' case because one of Collins' *current* charges was a drug possession crime and the trial court believed the instruction would amount to an improper judicial comment on the evidence. Collins did not object to any other jury instructions.

The jury found Collins guilty of possession of a stolen vehicle and possession of methamphetamine. Collins appeals.

ANALYSIS

I. MISTRIAL MOTION

Collins first argues that the trial court erred in denying his motion for a mistrial based on a juror's childhood acquaintance with one of the State's potential rebuttal witnesses. We disagree.

A. Standard of Review; Right to Impartial Jury

"'[W]hether to grant a motion for a mistrial is a matter addressed to the sound discretion of the trial court, and that court's discretion will be overturned on appeal only for abuse of discretion.'" *State v. Applegate*, 147 Wn. App. 166, 175-76, 194 P.3d 1000 (2008) (quoting *State v. Tigano*, 63 Wn. App. 336, 342, 818 P.2d 1369 (1991)). A trial court abuses its discretion when it bases its decision on untenable grounds or reasons. *State v. Smith*, 124 Wn. App. 417, 428, 102 P.3d 158 (2004), *aff'd*, 159 Wn.2d 778, 157 P.3d 873 (2007). The trial court should grant a motion for a mistrial "only when the defendant has been so prejudiced that nothing short of a new trial can insure that the defendant will be tried fairly." *State v. Lewis*, 130 Wn.2d 700, 707, 927 P.2d 235 (1996). As a reviewing court, we give great deference to the trial court because it was in the best position to discern prejudice for mistrial purposes. *Lewis*, 130 Wn.2d at 707; *Smith*, 124 Wn. App. at 428.

Both the federal and state constitutions guarantee an impartial jury in criminal prosecutions. U.S. CONST. amend. VI, XIV; WASH. CONST. art. I, §§ 3, 22; *State v. Davis*, 141 Wn.2d 798, 824-25, 10 P.3d 977 (2000). RCW 2.36.110 further provides that a trial court shall excuse "any juror, who *in the opinion of the judge*, has manifested unfitness as a juror by reason of bias, prejudice, indifference, . . . or by reason of conduct or practices incompatible with proper

and efficient jury service." (Emphasis added). Echoing this statute, CrR 6.5 also requires, "If at any time before submission of the case to the jury a juror is found unable to perform the duties the court shall order the juror discharged." Together, RCW 2.36.110 and CrR 6.5 "place a 'continuous obligation' on the trial court to investigate allegations of juror unfitness and to excuse jurors who are found to be unfit." *State v. Elmore*, 155 Wn.2d 758, 773, 123 P.3d 72 (2005) (quoting *State v. Jorden*, 103 Wn. App. 221, 227, 11 P.3d 866 (2000)).

Actual bias exists when "the juror's state of mind . . . satisfies the trial judge that the challenged person cannot try the issues impartially and without prejudice to the substantial rights of the challenging party."[4] *State v. Wilson*, 141 Wn. App. 597, 606, 171 P.3d 501 (2007). The party challenging the juror on the basis of actual bias bears the burden of demonstrating the facts necessary to sustain the challenge by a preponderance of evidence. *Wilson*, 141 Wn. App. at 606. In deciding whether a juror is actually biased, "the trial judge has 'fact-finding discretion,'" which allows the judge to weigh the challenged juror's credibility based on the judge's observations. *Jorden*, 103 Wn. App. at 229 (quoting *Ottis v. Stevenson-Carson Sch. Dist. No. 303*, 61 Wn. App. 747, 753, 812 P.2d 133 (1991)). As with other factual determinations made by the trial court, we defer to its decision. *Jorden*, 103 Wn. App. at 229.

---

[4] Collins also argues that (1) the juror had an "*implied* bias" based on his childhood acquaintance with Hammer because "[i]t is human nature to want to believe your friend over that of a total stranger"; and (2) this implied bias denied him a fair trial. Br. of Appellant at 14-15 (emphasis added). Because Collins cites no authority in support, we need not consider this argument. RAP 10.3(a)(6). But even were we to address this argument, it would fail because the legislature has not included childhood friendship on its exhaustive list of relationships between a potential juror and a party from which the law implies bias. *See* RCW 4.44.180.

## B. No Showing of Juror Bias

Division Three of our court has previously rejected a juror bias argument similar to Collins' argument. In *Wilson*, a juror notified the trial court after the first day of trial that she recognized a State witness. *Wilson*, 141 Wn. App. at 601. In response to the trial court's questioning, the juror responded that she "did not know [the State's witness] personally" and "had never talked to him," but she "knew that he worked in loss prevention" at the company where she had previously worked. *Wilson*, 141 Wn. App. at 602. The juror further explained that her former employment with the company would not impact her ability to decide the case fairly. *Wilson*, 141 Wn. App. at 602. Division Three held that the trial court did not err in refusing to dismiss the juror on the basis of actual bias. *Wilson*, 141 Wn. App. at 608.

Here, the trial court similarly questioned the juror outside of the presence of the other jurors about his acquaintance with potential State rebuttal witness Hammer. The juror responded that, although he had "[grown] up" with Hammer, the juror had not associated with Hammer in about "[f]ifteen years" and had seen him only "in passing" twice in the last year. 1 VRP at 152, 153. The juror further testified that his childhood acquaintance with Hammer would neither affect his ability to be impartial nor cause him to evaluate Hammer's testimony differently than other witnesses. The trial court evaluated the juror's demeanor and credibility and determined that his relationship with Hammer was of "ancient lineage" and that the juror could be fair and impartial. 1 VRP at 156. Again, we defer to the trial court on matters of credibility. *Jorden*, 103 Wn. App. at 229.

Accordingly, we hold that (1) Collins fails to show that the juror was actually biased, and (2) the trial court did not abuse its discretion in denying Collins' motion for mistrial.

## II. Jury Instruction on Credibility and Drug use

Collins next argues that the trial court erred in failing to give his proposed jury instruction that "'[w]hether or not the defendant was in possession of drugs should not be used . . . to determine his credibility.'" Br. of Appellant at 7 (quoting CP at 14). Again, we disagree.

### A. Standard of Review

We review a trial court's refusal to give a proposed jury instruction for abuse of discretion. *State v. Picard*, 90 Wn. App. 890, 902, 954 P.2d 336 (1998). A trial court abuses its discretion when it bases its decision on untenable grounds or reasons. *Smith*, 124 Wn. App. at 428. It is reversible error to refuse to give a proposed instruction if the instruction properly states the law and the evidence supports it. *State v. Hathaway*, 161 Wn. App. 634, 647, 251 P.3d 253, *review denied*, 172 Wn.2d 1021 (2011); *State v. Ager*, 128 Wn.2d 85, 93, 904 P.2d 715 (1995).

Nevertheless, "'a specific instruction need not be given when a more general instruction adequately explains the law and enables the parties to argue their theories of the case.'" *State v. Brown*, 132 Wn.2d 529, 605, 940 P.2d 546 (1997) (quoting *State v. Rice*, 110 Wn.2d 577, 603, 757 P.2d 889 (1988), *cert. denied*, 491 U.S. 910 (1989)), *cert. denied*, 523 U.S. 1007 (1998). The trial court may also refuse to give a party's proposed instruction if the instruction is repetitious or collateral to the instructions given. *Brown*, 132 Wn.2d at 605.

### B. Proposed Instruction Not Warranted

Relying on *Hardy*, Collins argues that the trial court erred in refusing to give his proposed instruction because he wanted the jury to understand that they "could not use the mere fact of his methamphetamine possession to negatively reflect on the credibility of his trial testimony." Br. of Appellant at 8. The facts in *Hardy*, however, are distinguishable from those

No. 42734-6-II

here. Hardy was on trial for robbery, and the State sought to impeach his testimony under ER 609(a) with evidence of his prior felony drug conviction. *Hardy*, 133 Wn.2d at 705-06. Noting the prejudicial nature of Hardy's prior conviction, the trial court allowed the conviction into evidence but required that it be denominated an "unnamed felony." *Hardy*, 133 Wn.2d at 706.

The Washington Supreme Court reversed, holding, (1) "Prior convictions are . . . only 'probative' under ER 609(a)(1) to the extent [that] they are probative of the witness's truthfulness"; and (2) "[w]e find nothing inherent in ordinary drug convictions to suggest the person convicted is untruthful and conclude [that] *prior drug convictions*, in general, are not probative of a witness's veracity under ER 609(a)(1)."[5] *Hardy*, 133 Wn.2d at 707-08, 709-10 (emphasis added).

Unlike the facts in *Hardy*, here, the State did not seek to impeach Collins' testimony under ER 609(a)[6] with evidence of a *prior* conviction for drug possession. Instead, Collins' possession of methamphetamine charge was one of two *current* charges for which he was

---

[5] The Supreme Court also noted that prior drug convictions were not crimes of "'dishonesty or false statement'" within the meaning of ER 609(a)(2). *Hardy*, 133 Wn.2d at 707.

[6] ER 609(a) provides:

> For the purpose of attacking the credibility of a witness in a criminal or civil case, evidence that the witness *has been convicted of a crime shall be admitted* if elicited from the witness or established by public record during examination of the witness *but only if* the crime (1) was punishable by death or imprisonment in excess of 1 year under the law under which the witness was convicted, and the court determines that the *probative value of admitting this evidence outweighs the prejudice to the party against whom the evidence is offered*, or (2) *involved dishonesty or false statement*, regardless of the punishment.

(Emphasis added.)

No. 42734-6-II

presently on trial. Thus, ER 609(a)(1) and the Supreme Court's analysis in *Hardy* are not dispositive and do not control our analysis here.

Significant here is that Collins' methamphetamine possession was substantive evidence of his current crimes. The State also presented other evidence to discredit Collins' testimony, including his numerous prior convictions for crimes of dishonesty or false statement and his prior inconsistent statements to Berndt and Hammer. In light of the substantive nature of the State's drug evidence and its other methods of impeaching Collins' testimony, it was not unreasonable for the trial court to refrain from drawing attention to Collins' drug-use and credibility issues for fear of appearing to be commenting on the evidence.[7]

Furthermore, to the extent that Collins was entitled to have the jury instructed that his current drug possession charge could not be used as substantive evidence of his guilt for his current possession of a stolen vehicle charge and that his drug possession charge was not "impeachment" evidence under ER 609(a), the other jury instructions adequately covered these points. For example, the trial court instructed the jury:

> A separate crime is charged in each count. *You must decide each count separately. Your verdict on one count should not control your verdict on any other count.*

CP at 24 (Instruction 5) (emphasis added).

---

[7] A judge is prohibited by article IV, section 16 of the Washington Constitution from "'conveying to the jury his or her personal attitudes toward the merits of the case' or instructing a jury that 'matters of fact have been established as a matter of law.'" *State v. Levy*, 156 Wn.2d 709, 721, 132 P.3d 1076 (2006) (quoting *State v. Becker*, 132 Wn.2d 54, 64, 935 P.2d 1321 (1997)) (citing WASH. CONST. art. IV, § 16). To constitute an improper comment on the evidence, the court need not have expressly conveyed to the jury its personal feelings on an element of the offense; it is sufficient if these feelings are merely implied. *Levy*, 156 Wn.2d at 721.

12

Evidence that the defendant has *previously* been convicted of a crime is not evidence of the defendant's guilt. Such evidence may be considered by you in deciding what weight or credibility should be given to the testimony of the defendant and for no other purpose.

CP at 25 (Instruction 6) (emphasis added). These instructions adequately explained the law and enabled both parties to argue their theories of the case to the jury.

Collins' proposed instruction was duplicative of these more general jury instructions, and the jury was otherwise adequately instructed on the law. Therefore, we hold that the trial court did not abuse its discretion in refusing to give Collins' proposed instruction.

### III. CUMULATIVE ERROR

Last, Collins argues that cumulative error denied him a fair trial. "The cumulative error doctrine applies where a combination of trial errors denies the accused a fair trial even where any one of the errors, taken individually, may not justify reversal." *In re Det. of Coe*, 175 Wn.2d 482, 515, 286 P.3d 29 (2012). Because Collins' has not established any single trial error, his claim of cumulative error fails.

### IV. SAG

In his SAG, Collins asserts that (1) his trial counsel "lied" to him and told him that he had to testify; and (2) his counsel told a witness who was to testify on his behalf that her testimony was not needed and that she should not be present at his trial. SAG at 1. Because these issues involve matters outside the trial record, Collins must raise them in a personal restraint petition. *State v. McFarland*, 127 Wn.2d 322, 335, 899 P.2d 1251 (1995). We therefore do not further consider these arguments.

13

No. 42734-6-II

Collins also asserts that the State presented evidence of a "dent puller" and inaccurately suggested to the jury that the ignition on Medeiros' truck had been "pulled" and damaged because, according to Collins, the ignition was "perfect." SAG at 1. Collins' assertion that the ignition was "perfect" conflicts with Medeiros' testimony that his truck's ignition was damaged and its key was difficult to turn when he retrieved the truck from police impound. The persuasiveness, credibility, and weight of the evidence are matters for the trier of fact and are not subject to our review. *See State v. Camarillo*, 115 Wn.2d 60, 71, 794 P.2d 850 (1990); *State v. Walton*, 64 Wn. App. 410, 415-16, 824 P.2d 533, *review denied*, 119 Wn.2d 1011 (1992). Thus, Collins' assertion does not support reversal of his conviction.

We affirm Collins' convictions.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Hunt, P.J.

We concur:

Penoyar, J.

Bjorgen, J.

14