171 P.3d 501 (2007)
STATE of Washington, Respondent,
v.
James WILSON, Jr., Appellant.
No. 25458-5-III.
Court of Appeals of Washington, Division 3.
November 6, 2007.
*503 Janet G. Gemberling, Julia Anne Dooris, Gemberling & Dooris PS, Spokane, WA, for Appellant.
Kevin Michael Korsmo, Attorney at Law, Andrew J. Metts III, Spokane County Pros. Offc, Spokane, WA, for Respondent.
Stephens, J.
¶ 1 James Wilson[1] appeals his conviction for one count of second degree theft. He contends he was denied his right to due process because he was not present for an in-chambers questioning of a juror; the court erred by failing to dismiss the juror for cause; and the evidence was insufficient to support his conviction. In his statement of additional grounds for review, Mr. Wilson also contends he was denied effective assistance of counsel. We affirm.

FACTS
¶ 2 On May 2, 2005, Wal-Mart loss prevention employee, Ron VanTassel, was looking for shoplifters when he saw Mr. Wilson pushing a shopping cart containing about 15 digital video disks (DVDs). Mr. VanTassel followed Mr. Wilson into the pet department and watched him take the DVDs out of the shopping cart. Mr. Wilson placed the DVDs on the back of a shelf and left the store. He then got into a car with two females.
¶ 3 Mr. VanTassel and Wal-Mart security guard, Chad Craig, got into Mr. VanTassel's car and followed Mr. Wilson to a Fred Meyer store. They watched Mr. Wilson go into the store. After 10 minutes, Mr. Wilson came out of the store and went to his car. He grabbed a coat from the car and put it on. He then went back into the store. Within five minutes, Mr. Wilson ran out of the store followed by a store employee. Mr. Wilson got into the car and sped out of the parking lot to a Staples store.
¶ 4 At Staples, Mr. VanTassel watched Mr. Wilson enter the store and come back out within a few minutes. Mr. Wilson then got into his car and left. Mr. VanTassel watched Mr. Wilson pull items from his front seat area and hand them to a female passenger in the back seat. He then proceeded to a Michaels store, where Mr. VanTassel observed similar events.
¶ 5 Mr. Wilson next stopped at a Rite-Aid store. He went into the Rite-Aid store for several minutes and came back out to his car. Mr. Wilson again leaned forward and handed items to the female passenger in the back seat.
¶ 6 At one point, Mr. VanTassel observed Mr. Wilson get out of his car and pull long strips of tin foil from his pants legs. He put the tin foil on the floorboard area of his car and sat back down. Mr. VanTassel then called the police, who stopped Mr. Wilson's car and placed Mr. Wilson under arrest.
¶ 7 Inside the vehicle, police found numerous DVDs, an MP3[2] player, a compact disk (CD) player and two telephones. Mr. Wilson was charged with one count of second degree theft. The matter proceeded to jury trial.
¶ 8 At the conclusion of the first day of trial, Juror No. 2 informed the trial judge's judicial assistant that she had recognized one of the State's witnesses, Rite-Aid employee, Joseph Spencer. The judicial assistant informed the trial judge and the next morning, *504 the judge held an in-chambers conference with the prosecutor and defense counsel to question the juror. Mr. Wilson was not present at the conference, and the record does not indicate whether he was aware the conference was taking place.
¶ 9 The juror told the trial judge that she was a former Rite-Aid employee. She said she had worked at Rite-Aid for 14 years, but had to quit because of scheduling and family issues. She said that she did not know Mr. Spencer personally and had never talked to him, but knew that he worked in loss prevention. The juror told the trial judge that her employment with Rite-Aid did not impact her ability to decide the case fairly. She also said that it did not matter to her at all that a Rite-Aid store was one of alleged victims in the case.
¶ 10 Defense counsel then questioned the juror. The following exchange occurred:
[Defense Counsel]: Is there any information that you have that would be shared in the jury room that isn't on the stand that would be unique to you because you worked there?
[Juror No. 2]: No, because I would only go over the evidence that is 
[Defense Counsel]: And did you work at the Rite-Aid at 5520 North Division?
[Juror No. 2]: I floated in there as a pharmacy technician in January a couple times and I think once in December, but his office is upstairs along with the district office people and I didn't see him at all.
Report of Proceedings (RP) (June 15, 2006) at 8. Defense counsel requested that the juror be replaced with an alternate juror. Defense counsel argued that as a former employee of a victim in the case, the juror had an "inherent bias." RP (June 15, 2006) at 9. Defense counsel also argued that the juror had some unique knowledge of the Rite-Aid store that could be discussed during jury deliberations. The court then stated:
I think, based on the record, I am certainly left with what she told us. Obviously, if she was still employed at Rite-Aid and if we hadn't realized that, certainly you could perhaps extrapolate from that bias and I certainly would be uncomfortable sitting there. But given the fact she hasn't worked there in four months and that she has no contact or connection with the given answers, I don't think I can remove her for cause. I don't think I have a basis on the record. It's a circumstance, but we get a lot of kind of strange circumstances on the jury. Doesn't mean that I can remove them for cause. So I am going to leave her on at this point.
RP (June 15, 2006) at 10.
¶ 11 Mr. Wilson was convicted as charged. He was sentenced to 19 ½ months' incarceration. This appeal follows.

ANALYSIS
A. In-Chamber Conference with Juror No. 2
¶ 12 Mr. Wilson contends his due process rights were violated because he was not present for the in-chambers conference concerning Juror No. 2, which he maintains amounted to an extension of voir dire.
¶ 13 A criminal defendant has a constitutional right under the confrontation clause of the Sixth Amendment and the due process clause of the Fourteenth Amendment to be present during all critical stages of the criminal proceeding. United States v. Gagnon, 470 U.S. 522, 526, 105 S.Ct. 1482, 84 L.Ed.2d 486 (1985).[3] The core of this right is the right to be present when evidence is presented. Id.; see also In re Pers. Restraint of Lord, 123 Wash.2d 296, 306, 868 P.2d 835, clarified, 123 Wash.2d 737, 870 P.2d 964, cert. denied, 513 U.S. 849, 115 S.Ct. 146, 130 L.Ed.2d 86 (1994). Even in proceedings where the defendant is not confronting witnesses or evidence against him, the due process clause guarantees the defendant's right to be present "`whenever his presence has a relation, reasonably substantial, to the fulness of his opportunity to defend against the charge.'" Lord, 123 Wash.2d *505 at 306, 868 P.2d 835 (quoting Gagnon, 470 U.S. at 526, 105 S.Ct. 1482); see also Kentucky v. Stincer, 482 U.S. 730, 745, 107 S.Ct. 2658, 96 L.Ed.2d 631 (1987); Snyder v. Massachusetts, 291 U.S. 97, 105-08, 54 S.Ct. 330, 78 L.Ed. 674 (1934), overruled on other grounds by Malloy v. Hogan, 378 U.S. 1, 84 S.Ct. 1489, 12 L.Ed.2d 653 (1964). This right extends to jury voir dire, though the defendant's presence at this stage is only required because it is substantially related to the defense and allows the defendant "to give advice or suggestion or even to supersede his lawyers." Snyder, 291 U.S. at 106, 54 S.Ct. 330; United States v. Gordon, 829 F.2d 119, 124 (D.C.Cir.1987). "[T]he presence of a defendant is a condition of due process to the extent that a fair and just hearing would be thwarted by his absence, and to that extent only." Snyder, 291 U.S. at 107-08, 54 S.Ct. 330. "The exclusion of a defendant from a . . . proceeding should be considered in light of the whole record." Gagnon, 470 U.S. at 526-27, 105 S.Ct. 1482.
¶ 14 The focus of our inquiry, then, is on whether Mr. Wilson has demonstrated that his presence at the in-chambers conference bore a reasonably substantial relation to the fullness of his opportunity to defend against the charge, or whether a fair and just hearing was thwarted by his absence. Snyder, 291 U.S. at 105-08, 54 S.Ct. 330; Gagnon, 470 U.S. at 526, 105 S.Ct. 1482. Due process does not require a defendant's presence "`when presence would be useless, or the benefit but a shadow.'" State v. Berrysmith, 87 Wash.App. 268, 273, 944 P.2d 397 (1997) (quoting Snyder, 291 U.S. at 106-07, 54 S.Ct. 330), review denied, 134 Wash.2d 1008, 954 P.2d 277 (1998). Thus, for example, where purely legal matters are at issue in a proceeding, a defendant does not generally have the right to be present. Lord, 123 Wash.2d at 306, 868 P.2d 835 (holding defendant had no right to be present during various sidebar conferences and in-chambers hearings on "matters of law," where no prejudice was shown); State v. Bremer, 98 Wash. App. 832, 834-35, 991 P.2d 118 (2000) (holding defendant had no right to be present at in-chambers conference regarding jury instructions).
¶ 15 On facts similar to those here, the United States Supreme Court has held that due process does not require a defendant's presence at in-chambers discussions between a judge and an impaneled juror. See Gagnon, 470 U.S. at 526, 105 S.Ct. 1482 (holding "[w]e think it clear that respondents' rights under the Fifth Amendment Due Process Clause were not violated by the in camera discussion with the juror"); accord United States v. Olano, 62 F.3d 1180, 1190-91 (9th Cir.1995) (rejecting due process challenge where judge had questioned juror about her impartiality outside the presence of defendant and counsel), cert. denied sub nom. Gray v. United States, 519 U.S. 931, 117 S.Ct. 303, 136 L.Ed.2d 221 (1996). No Washington court has addressed this situation, and we do not read the federal authority as suggesting that a defendant's presence at such a conference could never be a condition of due process. However, Mr. Wilson must demonstrate how his presence was necessary to secure his due process rights; prejudice will not be presumed. Lord, 123 Wash.2d at 307, 868 P.2d 835.
¶ 16 Mr. Wilson has offered no facts to substantiate a due process violation. The conference involving Juror No. 2 was simply to inquire whether she could be impartial in light of her realization that she recognized a witness in the case. As in Gagnon, this was a "short interlude" in the trial. Gagnon, 470 U.S. at 527, 105 S.Ct. 1482. Mr. Wilson's counsel was able to question the juror, even though this was not required under the due process clause. Olano, 62 F.3d at 1190 (finding no due process violation where court met with juror "one on one" in chambers); cf. United States v. Stratton, 649 F.2d 1066, 1080-81 (5th Cir.1981) (recognizing that defendant's attorney's presence is relevant to whether defendant was prejudiced by absence from proceeding). Mr. Wilson asserts that if he had been involved in the in-chambers conference, he may have been able to offer information to counsel that would have been relevant to the questioning of the juror. However, this hypothetical possibility does not rise to the level of a showing that his presence bore a reasonably substantial relation to the fullness of his opportunity to defend himself, or that a fair and just hearing *506 was thwarted by his absence. Snyder, 291 U.S. at 105-08, 54 S.Ct. 330; Gagnon, 470 U.S. at 526, 105 S.Ct. 1482; Lord, 123 Wash.2d at 306, 868 P.2d 835; see also United States v. Kenrick, 221 F.3d 19, 33 (1st Cir.) (stating that "[m]ere speculation and bare allegations" are insufficient to make out a due process violation), cert. denied, 531 U.S. 961, 121 S.Ct. 387, 148 L.Ed.2d 299 (2000). We conclude that Mr. Wilson's presence at the in-chambers questioning of Juror No. 2 was not required under the due process clause.[4]
B. Trial Court's Failure to Excuse Juror No. 2 for Cause
¶ 17 Mr. Wilson contends the court erred by failing to excuse Juror No. 2 for cause. The decision to grant or deny a particular challenge for cause is a matter addressed to the discretion of the trial judge. State v. Gilcrist, 91 Wash.2d 603, 611, 590 P.2d 809 (1979).
¶ 18 Actual bias arises when the juror's state of mind relative to the case satisfies the trial judge that the challenged person cannot try the issues impartially and without prejudice to the substantial rights of the challenging party. Ottis v. Stevenson-Carson Sch. Dist. No. 303, 61 Wash.App. 747, 752, 812 P.2d 133 (1991); RCW 4.44.170(2). Therefore, when a challenge for actual bias is made, the trial court must assess the prospective juror's state of mind. State v. Jackson, 75 Wash.App. 537, 542-43, 879 P.2d 307 (1994), review denied, 126 Wash.2d 1003, 891 P.2d 37 (1995). This involves a question of preliminary fact, and the party challenging the juror on the ground of actual bias bears the burden of demonstrating the facts necessary to sustain the challenge by a preponderance of the evidence. Ottis, 61 Wash.App. at 752-53, 812 P.2d 133.
¶ 19 Relying on State v. Fire, 100 Wash. App. 722, 998 P.2d 362 (2000), rev'd on other grounds, 145 Wash.2d 152, 34 P.3d 1218 (2001), Mr. Wilson argues Juror No. 2 had significant experience with a victim in the case and that the court should not have relied on the juror's assertions that she would be able to fairly decide the case, because jurors are not likely to recognize their own personal biases.
¶ 20 In Fire, the defendant was charged with child molestation. The judge asked potential jurors if they had any reason for not wanting to sit on the jury. A juror raised his hand and responded:
The subject matter in this case. You know, if it was, you know, somebody stealing a car or even someone getting murdered, that's, you know, fine with me. But a case in this nature, you know, I consider him a baby raper, and it should just be severely punished.
I'm very opinionated when it comes to this kind of crime. I hold innocent  or children from conception [are] very dear, and they should be protected.
Id. at 724, 998 P.2d 362. The prosecutor attempted to rehabilitate the potential juror by asking him whether he would follow the court's instructions despite his strong feelings, and the juror responded affirmatively with one-word responses. Id. at 728, 998 P.2d 362. The trial court refused to excuse the challenged juror for cause, focusing on the juror's affirmative responses without recognizing that his initial responses demonstrated actual bias. Id.
¶ 21 On appeal, the court held that the prosecutor's attempts to rehabilitate the juror were insufficient, because few potential jurors "will fail to respond affirmatively to a leading question asking whether they can be fair and follow instructions." Id. The court emphasized that "appellate deference to trial court determinations of the ability of potential jurors to be fair and impartial is not a rubber stamp" where a potential juror's initial responses indicate actual bias. Id. at 729, 998 P.2d 362. Because the juror's initial responses clearly indicated actual bias, the trial court should have removed the juror for cause. Id.
¶ 22 The circumstances here are unlike those in Fire. None of Juror No. 2's statements *507 or responses to the trial judge or counsel indicated any sort of actual bias. The juror simply stated that she had formerly worked at Rite-Aid and recognized one of the witnesses, but did not know him personally. The trial judge specifically asked the juror whether her employment with Rite-Aid impacted her ability to decide the case fairly. The juror responded by saying "[y]eah. No, I can  it won't affect my ability to judge fairly." RP (June 15, 2006) at 7. The trial judge then asked "[d]oes it matter to you at all that Rite-Aid was one of the people that allegedly had items taken?" Id. The juror responded with "[n]o." Id. Defense counsel then questioned the juror and none of her responses gave any indication that she would not be fair and impartial. The trial judge evaluated the juror's demeanor and determined that she could be fair. This was well within the trial judge's discretion, and the court did not err by refusing to dismiss the juror for cause.
C. Sufficiency of the Evidence
¶ 23 Mr. Wilson contends the evidence was insufficient to support his conviction. In reviewing a sufficiency of the evidence challenge, the test is whether, after viewing the evidence in a light most favorable to the State, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. State v. Green, 94 Wash.2d 216, 220-21, 616 P.2d 628 (1980). All reasonable inferences from the evidence must be drawn in favor of the State and interpreted most strongly against the defendant. State v. Salinas, 119 Wash.2d 192, 201, 829 P.2d 1068 (1992). The elements of a crime may be established by either direct or circumstantial evidence, and one type of evidence is no more valuable than the other. State v. Thompson, 88 Wash.2d 13, 16, 558 P.2d 202, appeal dismissed, 434 U.S. 898, 98 S.Ct. 290, 54 L.Ed.2d 185 (1977). "Credibility determinations are within the sole province of the jury and are not subject to review." State v. Myers, 133 Wash.2d 26, 38, 941 P.2d 1102 (1997). Assessing discrepancies in the trial testimony and weighing the evidence are also tasks within the sole province of the jury. State v. Longuskie, 59 Wash.App. 838, 844, 801 P.2d 1004 (1990).
¶ 24 A person is guilty of second degree theft when he or she commits theft of property or services exceeding $250 in value, but does not exceed $1,500 in value. RCW 9A.56.040(1)(a). "Theft" is defined as "[t]o wrongfully obtain or exert unauthorized control over the property or services of another or the value thereof, with intent to deprive him or her of such property." RCW 9A.56.020(1)(a).
¶ 25 Mr. Wilson claims that the State failed to prove that he committed the theft of property exceeding $250. He argues that neither of the State's witnesses, Fred Meyer employee, Brian Dryden, and Staples' employee, Jerry Wallette, could positively identify the merchandise stolen from their stores, and that the Rite-Aid merchandise only totaled $167.92, less than that required for second degree theft.
¶ 26 This argument does not accurately describe all the trial evidence. Mr. VanTassel testified that he watched Mr. Wilson enter both Fred Meyer and Staples. He said that after Mr. Wilson left various stores, he saw Mr. Wilson pull items from his front seat area and hand them to a female passenger in the back seat of the car.
¶ 27 Mr. Dryden testified that on May 2, 2005, he was contacted by police and asked to identify movies and electronic items from a bag. Mr. Dryden said that he was able to identify several DVD movies as coming from his store based on the location of the security tags. Mr. Dryden said he scanned the movies and gave a photocopy of the receipt to police. Mr. Dryden said that the value of the movies totaled $204.92.
¶ 28 Mr. Wallette then testified. He said that on May 2, 2005, he was contacted by police and told that they had telephones they believed had come from Staples. Mr. Wallette said he went to check the store shelf and discovered that two telephones were missing. He said that a stockperson had put the telephones on the shelf earlier in the day and that they had not sold any telephones that day. Mr. Wallette said that he generated a receipt for the police that valued the telephones at $65.08. Based on all the evidence, the jury could reasonably do the math *508 and find that Mr. Wilson committed theft of property exceeding $250 in value.
¶ 29 Mr. Wilson also argues that none of the store video surveillance cameras recorded him taking items from the stores. This is not required. Mr. VanTassel observed Mr. Wilson at the Fred Meyer, Staples, Michaels and Rite-Aid stores. Mr. VanTassel testified that after Mr. Wilson left the stores, he watched him hand items to a female passenger in his car. When Mr. Wilson was stopped by police, they found DVD movies, an MP3 player, a CD player and two telephones in his car. Circumstantial evidence is as reliable as direct evidence when assessing the sufficiency of the evidence. State v. Delmarter, 94 Wash.2d 634, 638, 618 P.2d 99 (1980). The evidence here was sufficient to show that Mr. Wilson committed second degree theft.
D. Ineffective Assistance of Counsel
¶ 30 In his statement of additional grounds for review, Mr. Wilson contends he was denied effective assistance of counsel at trial when defense counsel failed to inform him about the in-chambers conference with Juror No. 2.
¶ 31 To establish ineffective assistance of counsel, Mr. Wilson must show his attorney's performance was deficient and he was prejudiced by the deficiency. Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); State v. Hendrickson, 129 Wash.2d 61, 77-78, 917 P.2d 563 (1996). The first element is met by showing counsel's performance was not reasonably effective under prevailing professional norms. Hendrickson, 129 Wash.2d at 77, 917 P.2d 563. There is a strong presumption that counsel's performance is reasonable. State v. Thomas, 109 Wash.2d 222, 226, 743 P.2d 816 (1987). The second element is met by showing a reasonable probability that, but for counsel's deficient representation, the result would likely have been different. Id. If either element of the test is not satisfied, the inquiry ends. Hendrickson, 129 Wash.2d at 78, 917 P.2d 563.
¶ 32 Here, the in-chambers conference occurred during the morning session on the second day of trial. There is nothing in the record to establish whether defense counsel informed Mr. Wilson of the conference. Even if we assume he did not, and that the failure to do so was unreasonable, Mr. Wilson has shown no prejudice because he had no due process right to be present during an in-chambers questioning of a juror regarding her continued ability to impartially serve. See Gagnon, 470 U.S. at 526, 105 S.Ct. 1482; Olano, 62 F.3d at 1190-91.

CONCLUSION
¶ 33 We hold that Mr. Wilson's absence from the in-chambers conference involving Juror No. 2 did not violate his right to due process. Based on Juror No. 2's statements and responses during the in-chambers inquiry, the court did not err in refusing to dismiss the juror for cause. Further, the evidence was sufficient to support Mr. Wilson's conviction for second degree theft, and Mr. Wilson was not denied effective assistance of counsel.
¶ 34 We affirm.
WE CONCUR: SCHULTHEIS, A.C.J., and KULIK, J.
NOTES
[1] James Wilson is also known as James Williams.
[2] MPEG (Moving Picture Experts Group) 1 audio layer 3.
[3] Mr. Wilson does not claim a violation of his public trial right, an issue which our state Supreme Court and this court have recently addressed. See State v. Easterling, 157 Wash.2d 167, 137 P.3d 825 (2006); State v. Frawley, 140 Wash.App. 713, 167 P.3d 593 (2007).
[4] The State argues that any error in questioning Juror No. 2 outside Mr. Wilson's presence was harmless beyond a reasonable doubt. We do not reach the issue of harmless error because we conclude the trial court did not violate Mr. Wilson's due process rights.