[No. 42761-3-II.   Division Two.   September 24, 2013.]

THE STATE OF WASHINGTON, *Respondent*, v. DANIAL R. HALVERSON, *Appellant*.

*Thomas E. Doyle*, for appellant.

*Michael K. Dorcy, Prosecuting Attorney*, and *Timothy W. Whitehead* and *Timothy J. Higgs, Deputies*, for respondent.

¶1   JOHANSON, A.C.J. — Danial R. Halverson appeals his convictions for two counts of unlawful firearm possession, as well as attempted first degree murder and first degree assault, including firearm enhancements, after he shot his neighbor multiple times. After two trials, juries found Halverson guilty on all counts. Halverson appeals the two firearm convictions from the first trial and the attempted murder and first degree assault convictions from the second trial in this appeal. In the published portion of our opinion, we address Halverson's claim that the trial court violated his article I, section 22 public trial rights, as well as

the public's article I, section 10 open trial rights when it questioned a deliberating juror in chambers. Applying the experience prong of the "experience and logic" test, we hold that the public trial right does not attach to the preliminary, individual questioning of a deliberating juror about alleged misconduct and, accordingly, there was no violation of either Halverson's or the public's open and public trial rights.

¶2 In the unpublished portion of the opinion, we address Halverson's claims of an inadequate record for an effective appeal, prosecutorial misconduct, trial court error in ordering Halverson to undergo mental health counseling or treatment as a community custody provision, and trial court error for finding that he had a present or future ability to pay legal financial obligations. We also address Halverson's statement of additional grounds in which he claims ineffective assistance, prosecutorial misconduct, incomplete voir dire transcripts, and courtroom deficiencies. We affirm Halverson's convictions because, of the issues preserved for appeal, he demonstrates no reversible error. But we strike Halverson's mental health community custody condition and remand for correction of the judgment and sentence.

## FACTS

¶3 In September 2010, Halverson visited Michael Okoniewski's rural home. They spoke briefly, and as Okoniewski walked toward his shed to retrieve something for Halverson, he was shot multiple times. Okoniewski fell and rolled over to see Halverson standing near him with a gun in his hand; Okoniewski asked Halverson why he shot him, but Halverson walked away. Okoniewski managed to get to a neighbor's house for help. Before the aid unit arrived, he told his neighbors that Halverson had shot him.

¶4 Okoniewski survived the three gunshot wounds. While investigating the shooting, authorities learned that

Halverson, a felon, had illegally possessed a firearm on at least one occasion other than the day of the shooting. The State charged Halverson with attempted first degree murder; first degree assault, including firearm enhancements; and two counts of second degree unlawful firearm possession. After two trials, juries found Halverson guilty of all charges.

¶5 During the second trial, and after the jury discontinued its deliberations for the afternoon, the presiding juror alerted the bailiff that juror number 11 had looked up words in a dictionary. The trial court questioned juror number 11 in chambers, off the record, with the prosecutor and defense counsel present. Trial counsel agreed to discuss the matter in greater detail the following morning.

¶6 On the record the next morning with Halverson and trial counsel present, the trial court recounted the prior afternoon's events. Juror number 11 and the presiding juror stated that although juror number 11 looked up words in an on line dictionary, he had not shared his findings with others. The trial court declined to declare a mistrial and instead dismissed juror number 11 and replaced him with an alternate. The trial court ordered the jury to begin deliberations anew with the alternate.

## ANALYSIS

### Public Trial Rights

¶7 Halverson argues that the trial court violated his and the public's open and public trial rights when it questioned a sitting juror in chambers without first performing a *Bone-Club*[1] analysis on the record. Applying the experience prong of the experience and logic test, we hold that Halverson's public trial right does not attach to the preliminary, individual questioning of a deliberating juror sus-

---

[1] *State v. Bone-Club*, 128 Wn.2d 254, 906 P.2d 325 (1995).

pected of misconduct because such inquiry has not historically been open to the press and general public. Accordingly, no *Bone-Club* analysis is required before asking preliminary questions of a deliberating juror in chambers about whether the juror committed misconduct during deliberations. And, absent a violation of Halverson's public trial rights under article I, section 22, Halverson cannot demonstrate an article I, section 10 violation of the public's open trial rights that warrants his retrial.

## A. Standard of Review

¶8 We review violations of the public trial right de novo. *State v. Sublett*, 176 Wn.2d 58, 70, 292 P.3d 715 (2012). The federal and state constitutions protect the public trial right. U.S. CONST. amend. VI; WASH. CONST. art. I, §§ 10, 22. The Washington Constitution, article I, section 10 affords the public and press the right to open and accessible court proceedings, while article I, section 22 guarantees a defendant the right to a public trial by an impartial jury. The public trial right is designed to ensure a fair trial, to remind the officers of the court of the importance of their functions, to encourage witnesses to come forward, and to discourage perjury. *State v. Strode*, 167 Wn.2d 222, 226, 217 P.3d 310 (2009).

¶9 Generally, before a trial court can close any part of a trial from the public, it must first apply, on the record, the five-part *Bone-Club* analysis. *Bone-Club*, 128 Wn.2d at 258-59. To determine whether a proceeding must be open to the press and public, we apply the "experience and logic test." *Sublett*, 176 Wn.2d at 72-73. Under this test, "the experience prong . . . asks 'whether the place and process have historically been open to the press and general public,'" while "[t]he logic prong asks 'whether public access plays a significant positive role in the functioning of the particular process in question.'" *Sublett*, 176 Wn.2d at 73 (quoting *Press-Enter. Co. v. Superior Court*, 478 U.S. 1, 8,

106 S. Ct. 2735, 92 L. Ed. 2d 1 (1986). If the answer to both prongs is yes, the public trial right attaches and the trial court must conduct a *Bone-Club* analysis on the record before closing the proceedings. *Sublett*, 176 Wn.2d at 73. The appellant bears the burden of establishing a public trial right violation. *Sublett*, 176 Wn.2d at 75. And when an appellant seeks a new trial to remedy an alleged violation of the public's article I, section 10 rights to open proceedings— without also demonstrating an article I, section 22 violation of the defendant's public trial rights—the alleged error does not warrant a retrial. *State v. Beskurt*, 176 Wn.2d 441, 446, 293 P.3d 1159 (2013).

## B. Analysis

¶10 Halverson argues that questioning an impaneled juror during deliberations on suspicion of misconduct is analogous to questioning a juror for potential biases during pretrial voir dire.[2] The State disagrees and distinguishes between juror voir dire and questioning deliberating jurors during trial. We agree with the State.

¶11 To demonstrate accepted historical practices in Washington, the State cites *State v. Wilson*, 141 Wn. App. 597, 171 P.3d 501 (2007), which involved the in-camera questioning of an impaneled juror. In *Wilson*, an impaneled juror alerted the trial judge's assistant that she recognized one of the State's witnesses in a theft case. 141 Wn. App. at 601. The assistant informed the judge, who held an in-

---

[2] Regarding the experience test, Halverson cites cases unlike the present matter. He cites *State v. Sadler*, 147 Wn. App. 97, 118, 193 P.3d 1108 (2008) (holding that public trial right exists in context of *Batson v. Kentucky*, 476 U.S. 79, 106 S. Ct. 1712, 90 L. Ed. 2d 69 (1986) hearing because it "involves factual and credibility determinations and is relevant to the fairness and integrity of the judicial process as a whole"), *review denied*, 176 Wn.2d 1032 (2013). But in *Sublett*, our Supreme Court expressly rejected our reasoning in *Sadler*. 176 Wn.2d at 72 (rejecting *Sadler*, "We decline to draw the line with legal and ministerial issues on one side, and the resolution of disputed facts and other adversarial proceedings on the other"). Halverson also relies on cases that involve jury voir dire proceedings, which have historically been open to the press and general public. *State v. Paumier*, 176 Wn.2d 29, 34, 288 P.3d 1126 (2012); *State v. Wise*, 176 Wn.2d 1, 8, 15, 288 P.3d 1113 (2012).

chambers conference to question the juror with the prosecutor and defense counsel present, but not the defendant. *Wilson*, 141 Wn. App. at 601-02. The trial court learned that one of the victims had employed the juror, and defense counsel moved to dismiss the juror because she could taint the jury during deliberations. *Wilson*, 141 Wn. App. at 602. The trial judge did not dismiss the juror for cause, and the jury convicted the defendant. *Wilson*, 141 Wn. App. at 602-03. Division Three of this court held that this in-camera meeting without the defendant present was a " 'short interlude' " at trial that did not violate the defendant's rights to be present. *Wilson*, 141 Wn. App. at 605 (quoting *United States v. Gagnon*, 470 U.S. 522, 527, 105 S. Ct. 1482, 84 L. Ed. 2d 486 (1985)).

¶12 Federal courts show a similar historical acceptance and practice of in-camera questioning of impaneled jurors. *See, e.g., United States v. Edwards*, 823 F.2d 111, 117 (5th Cir. 1987) ("Experience and logic do indeed provide the reasons why midtrial proceedings involving the questioning of jurors have traditionally been closed to the public: holding such proceedings in open court would itself introduce an element of bias and would substantially raise the risk of destroying the effectiveness of the jury."), *cert. denied*, 485 U.S. 934 (1988). Given this documented practice in Washington and elsewhere, in-camera questioning of impaneled jurors has not traditionally been open to the press and general public. Thus, Halverson's argument fails the experience prong of the experience and logic test, and we need not address the logic prong.

¶13 In conclusion, experience tells us that the place and process of preliminary, individual questioning of impaneled jurors for misconduct has not historically been open to the public, and the trial court did not err by conducting this proceeding in chambers. Therefore, Halverson did not demonstrate reversible error relating to a violation of his article I, section 22 public trial rights. And because Halverson sought a new trial to remedy an alleged

violation of the public's article I, section 10 rights to open proceedings, without also demonstrating an article I, section 22 violation, any alleged error regarding the public's rights,[3] does not warrant a retrial. *See Beskurt*, 176 Wn.2d at 446.

¶14 We affirm Halverson's convictions.

¶15 A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder shall be filed for public record in accordance with RCW 2.06.040, it is so ordered.

FEARING, J., concurs.

¶16 QUINN-BRINTNALL, J. (concurring in part) — I concur with the majority opinion's conclusion that the public trial right does not attach to the preliminary, individual questioning of a deliberating juror about alleged misconduct, and its analysis concerning the adequacy of the record for an effective appeal, prosecutorial misconduct, and ordering mental health counseling. I also concur with the majority opinion's treatment of the issues Danial Halverson raises in his statement of additional grounds. However, for the reasons stated in *State v. Lundy*, 176 Wn. App. 96, 308 P.3d 755 (2013), on the issue of legal financial obligations, I concur only in the result.

Review denied at 179 Wn.2d 1016 (2014).

---

[3] Even if we assume, without deciding, that Halverson had standing to raise a claim on the public's behalf, his argument fails.