FILED
COURT OF APPEALS
DIVISION II

2013 SEP 24  AM 9: 24

STATE OF WASHINGTON

BY_____
        DEPUTY

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>               Respondent,<br><br>v.<br><br>DANIAL R. HALVERSON,<br><br>               Appellant. | No. 42761-3-II<br><br><br><br>PART PUBLISHED OPINION |

JOHANSON, A.C.J. — Danial R. Halverson appeals his convictions for two counts of unlawful firearm possession, as well as attempted first degree murder and first degree assault, including firearm enhancements, after he shot his neighbor multiple times. After two trials, juries found Halverson guilty on all counts. Halverson appeals the two firearm convictions from the first trial and the attempted murder and first degree assault convictions from the second trial in this appeal. In the published portion of our opinion, we address Halverson's claim that the trial court violated his article I, section 22 public trial rights, as well as the public's article I, section 10 open trial rights when it questioned a deliberating juror in-chambers. Applying the experience prong of the "experience and logic" test, we hold that the public trial right does not attach to the preliminary, individual questioning of a deliberating juror about alleged misconduct and, accordingly, there was no violation of either Halverson's or the public's open and public trial rights.

In the unpublished portion of the opinion, we address Halverson's claims of an inadequate record for an effective appeal, prosecutorial misconduct, trial court error in ordering

Halverson to undergo mental health counseling or treatment as a community custody provision, and trial court error for finding that he had a present or future ability to pay legal financial obligations (LFOs). We also address Halverson's statement of additional grounds (SAG) in which he claims ineffective assistance, prosecutorial misconduct, incomplete voir dire transcripts, and courtroom deficiencies. We affirm Halverson's convictions because, of the issues preserved for appeal, he demonstrates no reversible error. But we strike Halverson's mental health community custody condition and remand for correction of the judgment and sentence.

## FACTS

In September 2010, Halverson visited Michael Okoniewski's rural home. They spoke briefly and, as Okoniewski walked toward his shed to retrieve something for Halverson, he was shot multiple times. Okoniewski fell and rolled over to see Halverson standing near him with a gun in his hand; Okoniewski asked Halverson why he shot him, but Halverson walked away. Okoniewski managed to get to a neighbor's house for help. Before the aid unit arrived, he told his neighbors that Halverson had shot him.

Okoniewski survived the three gunshot wounds. While investigating the shooting, authorities learned that Halverson, a felon, had illegally possessed a firearm on at least one occasion other than the day of the shooting. The State charged Halverson with attempted first degree murder, first degree assault, including firearm enhancements, and two counts of second degree unlawful firearm possession. After two trials, juries found Halverson guilty of all charges.

No. 42761-3-II

During the second trial, and after the jury discontinued its deliberations for the afternoon, the presiding juror alerted the bailiff that juror number 11 had looked up words in a dictionary. The trial court questioned juror number 11 in chambers, off the record, with the prosecutor and defense counsel present. Trial counsel agreed to discuss the matter in greater detail the following morning.

On the record the next morning with Halverson and trial counsel present, the trial court recounted the prior afternoon's events. Juror number 11 and the presiding juror stated that although juror number 11 looked up words in an online dictionary, he had not shared his findings with others. The trial court declined to declare a mistrial and instead dismissed juror number 11 and replaced him with an alternate. The trial court ordered the jury to begin deliberations anew with the alternate.

ANALYSIS

PUBLIC TRIAL RIGHTS

Halverson argues that the trial court violated his and the public's open and public trial rights when it questioned a sitting juror in chambers without first performing a *Bone-Club*[1] analysis on the record. Applying the experience prong of the experience and logic test, we hold that Halverson's public trial right does not attach to the preliminary, individual questioning of a deliberating juror suspected of misconduct because such inquiry has not historically been open to the press and general public. Accordingly, no *Bone-Club* analysis is required before asking

---

[1] *State v. Bone-Club*, 128 Wn.2d 254, 906 P.2d 325 (1995).

3

preliminary questions of a deliberating juror in chambers about whether the juror committed misconduct during deliberations. And, absent a violation of Halverson's public trial rights under article I, section 22, Halverson cannot demonstrate an article I, section 10 violation of the public's open trial rights that warrants his retrial.

### A. Standard of Review

We review violations of the public trial right de novo. *State v. Sublett*, 176 Wn.2d 58, 70, 292 P.3d 715 (2012). The federal and state constitutions protect the public trial right. U.S. CONST. amend. VI; WASH. CONST. art. I, §§ 10, 22. The Washington Constitution, article I, section 10 affords the public and press the right to open and accessible court proceedings, while article I, section 22 guarantees a defendant the right to a public trial by an impartial jury. The public trial right is designed to ensure a fair trial, to remind the officers of the court of the importance of their functions, to encourage witnesses to come forward, and to discourage perjury. *State v. Strode*, 167 Wn.2d 222, 226, 217 P.3d 310 (2009).

Generally, before a trial court can close any part of a trial from the public, it must first apply, on the record, the five-part *Bone-Club* analysis. *State v. Bone-Club*, 128 Wn.2d 254, 258-59, 906 P.2d 325 (1995). To determine whether a proceeding must be open to the press and public, we apply the "experience and logic test." *Sublett*, 176 Wn.2d at 72-73. Under this test, "the experience prong . . . asks 'whether the place and process have historically been open to the press and general public,'" while "[t]he logic prong asks 'whether public access plays a significant positive role in the functioning of the particular process in question.'" *Sublett*, 176 Wn.2d at 73 (quoting *Press-Enter. Co. v. Riverside County Superior Court*, 478 U.S. 1, 8, 106 S. Ct. 2735, 92 l. Ed. 2d 1 (1986). If the answer to both prongs is yes, the public trial right attaches,

4

and the trial court must conduct a *Bone-Club* analysis on the record before closing the proceedings. *Sublett*, 176 Wn.2d at 73. The appellant bears the burden of establishing a public trial right violation. *Sublett*, 176 Wn.2d at 75. And when an appellant seeks a new trial to remedy an alleged violation of the public's article I, section 10 rights to open proceedings— without also demonstrating an article I, section 22 violation of the defendant's public trial rights—the alleged error does not warrant a retrial. *State v. Beskurt*, 176 Wn.2d 441, 446, 293 P.3d 1159 (2013).

## B. Analysis

Halverson argues that questioning an impaneled juror during deliberations on suspicion of misconduct is analogous to questioning a juror for potential biases during pretrial voir dire.[2] The State disagrees and distinguishes between juror voir dire and questioning deliberating jurors during trial. We agree with the State.

To demonstrate accepted historical practices in Washington, the State cites *State v. Wilson*, 141 Wn. App. 597, 171 P.3d 501 (2007), which involved the in-camera questioning of an impaneled juror. In *Wilson*, an impaneled juror alerted the trial judge's assistant that she recognized one of the State's witnesses in a theft case. 141 Wn. App. at 601. The assistant

---

[2] Regarding the experience test, Halverson cites cases unlike the present matter. He cites *State v. Sadler*, 147 Wn. App. 97, 118, 193 P.3d 1108 (2008), *review denied*, 176 Wn.2d 1032 (2013) (holding that public trial right exists in context of *Batson* hearing because it "involves factual and credibility determinations and is relevant to the fairness and integrity of the judicial process as a whole."). But in *Sublett*, our Supreme Court expressly rejected our reasoning in *Sadler*. 176 Wn.2d at 72 (rejecting *Sadler*, "We decline to draw the line with legal and ministerial issues on one side, and the resolution of disputed facts and other adversarial proceedings on the other."). Halverson also relies on cases that involve jury voir dire proceedings, which have historically been open to the press and general public. *State v. Paumier*, 176 Wn.2d 29, 34, 288 P.3d 1126 (2012); *State v. Wise*, 176 Wn.2d 1, 8, 15, 288 P.3d 1113 (2012).

informed the judge, who held an in-chambers conference to question the juror with the prosecutor and defense counsel present, but not the defendant. *Wilson*, 141 Wn. App. at 601-02. The trial court learned that one of the victims had employed the juror, and defense counsel moved to dismiss the juror because she could taint the jury during deliberations. *Wilson*, 141 Wn. App. at 602. The trial judge did not dismiss the juror for cause, and the jury convicted the defendant. *Wilson*, 141 Wn. App. at 602-03. Division Three of this court held that this in-camera meeting without the defendant present was a "short interlude" at trial that did not violate the defendant's rights to be present. *Wilson*, 141 Wn. App. at 605 (citing *United States v. Gagnon*, 470 U.S. 522, 527, 105 S. Ct. 1482, 84 L. Ed. 2d 486 (1985)).

Federal courts show a similar historical acceptance and practice of in-camera questioning of impaneled jurors. *See, e.g. United States v. Edwards*, 823 F.2d 111, 117 (5th Cir. 1987), *cert. denied*, 485 U.S. 934 (1988) ("Experience and logic do indeed provide the reasons why midtrial proceedings involving the questioning of jurors have traditionally been closed to the public: holding such proceedings in open court would itself introduce an element of bias and would substantially raise the risk of destroying the effectiveness of the jury."). Given this documented practice in Washington and elsewhere, in-camera questioning of impaneled jurors has not traditionally been open to the press and general public. Thus, Halverson's argument fails the experience prong of the experience and logic test, and we need not address the logic prong.

In conclusion, experience tells us that the place and process of preliminary, individual questioning of impaneled jurors for misconduct has not historically been open to the public, and the trial court did not error by conducting this proceeding in chambers. Therefore, Halverson did not demonstrate reversible error relating to a violation of his article I, section 22 public trial

rights. And because Halverson sought a new trial to remedy an alleged violation of the public's article 1, section 10 rights to open proceedings, without also demonstrating an article I, section 22 violation, any alleged error regarding the public's rights,[3] does not warrant a retrial. *See Beskurt*, 176 Wn.2d at 446.

We affirm Halverson's convictions.

A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder shall be filed for public record in accordance with RCW 2.06.040, it is so ordered.

### ADDITIONAL FACTS: FIRST TRIAL

Before the first trial, the jail alerted the trial court that Halverson might have mental health issues raising doubt about his competency to assist counsel at trial. The trial court ordered a mental health evaluation and sent Halverson to Western State Hospital. Months later, the trial court found that treatment had restored Halverson's competency and held his first trial.

At trial, the jury heard testimony from Halverson's acquaintances, John Allen Sr. and John Allen Jr., that, in August 2010, Halverson possessed and then gave John Allen Sr. a shotgun. And Halverson conceded that he possessed and gave Allen the shotgun. The jury also heard Okoniewski's testimony that, after Halverson shot him, Okoniewski saw Halverson holding a gun. The jury deadlocked on the attempted first degree murder and first degree assault charges and found Halverson guilty on the two second degree unlawful firearm possession charges.

---

[3] Even if we assume, without deciding, that Halverson had standing to raise a claim on the public's behalf, his argument fails.

The trial court later announced that the courtroom's recording equipment had malfunctioned and had not recorded the last part of the first trial's proceedings. The parties entered an agreed report of proceedings:

> The parties agree that the Court properly admitted defense exhibits before the defense rested its case; the proposed jury instructions are properly filed in the court file and the instructions given by the Court are also properly filed within the Court file, there were no exceptions to the Court's instructions; closing argument [cannot] be re-created, the defense cannot stipulate that there was no error by either defense attorney or prosecutor; jury deliberations were proper for the first trial, any questions sent to the Court by the jury are properly filed in the Court file; and the verdicts were properly recorded with [the] Court after appropriate inquiry as to the possibility of reaching a verdict in accordance with the WPIC or instruction on being unable to reach a verdict.

Clerk's Papers (CP) at 22.

## II. SECOND TRIAL

The State retried Halverson on the attempted first degree murder and first degree assault charges. Okoniewski recounted how Halverson came to his home and shot him. Okoniewski described seeing Halverson, whom he had known for many years, with a gun just moments after the shooting and asking Halverson why he shot him; but, Halverson did not respond. Other witnesses, including neighbors and medical workers, also testified that Okoniewski told them the same details about the shooting.

At closing arguments, Halverson argued that while there is "no doubt Mr. Okoniewski was shot," Halverson was not the shooter. 5B[4] Verbatim Report of Proceedings (VRP) at 953. During rebuttal closing, the prosecutor responded, "But the bottom line is this. Do you have enough to have a reasonable doubt that someone other than Danial Halverson shot Mr.

---

[4] "A" refers to the first trial record and "B" refers to the second trial record.

8

No. 42761-3-II

Okoniewski." 6B VRP at 1016. Halverson unsuccessfully objected to this argument. The prosecutor then continued without objection, "So to acquit Danial Halverson then, you have to have a reasonable doubt that Mr. Halverson was the person who shot Okoniewski. And I challenge you—I challenge you to find a reason for that doubt." 6B VRP at 1017.

The jury found Halverson guilty of both attempted first degree murder and first degree assault, including the firearm enhancements. At sentencing, the trial court ordered Halverson to pay $46,424.83 in LFOs.[5] The court indicated on the judgment and sentence that it had considered the total amount Halverson owed, as well as his present and future ability to pay, including his financial resources and likelihood his status would change. The trial court found that Halverson had the ability or likely future ability to pay the imposed LFOs.

Finally, after the State referenced Halverson's prior mental health treatment, the trial court, without objection, ordered Halverson to participate in mental health counseling or treatment at his community corrections officer's direction. Halverson appeals.

MISSING TRANSCRIPT FROM FIRST TRIAL'S CLOSING ARGUMENT

Halverson claims that he was deprived of his constitutional right to appeal and to present an effective appeal from his two firearms convictions because he lacked a verbatim record of closing arguments from the first trial. Without specificity, he suggests that because he alleged prosecutorial misconduct at the second trial, the prosecutor likely committed misconduct at the

---

[5] A $500 victim assessment; $5,572.52 in court costs ($200 filing fee, $853.02 witness costs, $4,019.50 sheriff service fees, $500 jury demand fee); $24,862 for court-appointed attorney (remainder reserved); $15,290.31 for court-appointed defense expert and other defense costs; $100 crime lab fee; and a $100 DNA collection fee.

9

first trial such that his firearms convictions should be reversed. Because Halverson cannot demonstrate prejudice arising from the missing transcripts, his argument fails.

## A. Standard of Review

A criminal defendant is constitutionally entitled to a record of sufficient completeness to permit effective appellate review of his claims. *State v. Tilton*, 149 Wn.2d 775, 781, 72 P.3d 735 (2003). A record of sufficient completeness, however, does not automatically translate into a complete verbatim transcript. *Tilton*, 149 Wn.2d at 781. In the absence of a complete record, the appellant must prepare either a narrative report of proceedings under RAP 9.3 or an agreed report of proceedings under RAP 9.4, and file that with the trial court. *Tilton*, 149 Wn.2d at 782. Objections and proposed amendments to either the narrative report or a verbatim report are filed with the trial court, and the trial judge settles any disputes. *Tilton*, 149 Wn.2d at 782. When reviewing whether the record is sufficient to allow review, we consider the following factors:

> (1) whether all or only part of the trial record is missing or reconstructed; (2) the importance of the missing portion to review the issues raised on appeal; (3) the adequacy of the reconstructed record to permit appellate review; and (4) the degree of resultant prejudice from the missing or reconstructed record, if any, to the defendant.

*State v. Classen*, 143 Wn. App. 45, 57, 176 P.3d 582, *review denied*, 164 Wn.2d 1016 (2008).

The absence of a portion of the record is not reversible unless the defendant can demonstrate prejudice. *State v. Burton*, 165 Wn. App. 866, 883, 269 P.3d 337, *review denied*, 174 Wn.2d 1002 (2012). Where the nature of the error is one that trial counsel probably would have remembered, such as prosecutorial misconduct during closing argument, even the entire loss of the pertinent record may not prevent effective review. *Burton*, 165 Wn. App. at 883-84.

## B. Analysis

Halverson supports his argument with two cases, *State v. Larson*, 62 Wn.2d 64, 381 P.2d 120 (1963), and *Tilton*. Both cases are distinguishable from the facts here. In *Larson*, the court reporter's trial notes were lost, so a verbatim statement of facts could not be provided to appellate counsel. 62 Wn.2d at 65. Appellate counsel claimed that he could not represent Larson on appeal without the verbatim record of the trial proceedings. *Larson*, 62 Wn.2d at 65. Our Supreme Court held that, since appellate counsel did not represent Larson at trial, he could not satisfactorily determine what errors to assign on appeal; accordingly, without a verbatim record of trial proceedings, the Supreme Court reversed Larson's conviction and remanded for retrial. *Larson*, 62 Wn.2d at 67.

In *Tilton*, a technical error resulted in a 36-minute gap in the recorded proceedings. 149 Wn.2d at 779. The gap included all of Tilton's direct examination and most of his cross-examination. *Tilton*, 149 Wn.2d at 779. Tilton was convicted, and the trial court discovered the gap just before sentencing. *Tilton*, 149 Wn.2d at 780. After sentencing the State moved to reconstruct the missing record, and the trial court asked that the State, defense counsel, and presiding court commissioner submit affidavits of their recollections of the lost testimony. *Tilton*, 149 Wn.2d at 780. Tilton's defense counsel's affidavit said that he had no recollection of Tilton's testimony, nor did he have any notes regarding it. *Tilton*, 149 Wn.2d at 780.

Our Supreme Court held that the reconstructed record was insufficiently complete to allow Tilton to raise the claims he sought to pursue on appeal. *Tilton*, 149 Wn.2d at 783. Tilton's trial attorney had kept no notes and did not recall Tilton's testimony, and appellant counsel was not present at trial and was unable to judge the reconstructed record's completeness,

11

determine appealable issues, or support appealable issues that depended on Tilton's testimony. *Tilton*, 149 Wn.2d at 783. The missing record was critical to Tilton's appeal because appellate counsel could not establish an ineffective assistance of counsel claim based on trial counsel's failure to raise certain defenses, particularly when significant evidence suggested those defenses were available. *Tilton*, 149 Wn.2d at 783. Consequently, our Supreme Court vacated Tilton's conviction and remanded the matter for retrial. *Tilton*, 149 Wn.2d at 787.

The present matter is unlike *Larson* and *Tilton*. Though these cases, like Halverson's, each involve different trial and appellate counsel, here, Halverson complains of only missing closing arguments, not evidentiary portions of the trial. Unlike *Larson* and *Tilton*, here counsel's arguments are not evidence, thus there was no gap in the evidence; also, the trial court instructed the jury that counsel's arguments were not evidence, and we presume that the jury followed those instructions. And unlike *Tilton*, Halverson identifies no prejudice resulting from the missing transcript; he merely suggests the possibility of prosecutorial misconduct during closing argument and rebuttal in the trial that resulted in his conviction on two unlawful firearm possession charges. We do not presume error, and even had the prosecutor committed misconduct, the trial court could have cured the misconduct with a remedial instruction.

And in light of the overwhelming evidence that supports his two unlawful firearm possession convictions, we find no prejudice. At the first trial, the existing record shows that John Allen Sr. and John Allen Jr. testified that in August 2010, Halverson possessed and then gave John Allen Sr. a shotgun. And Halverson conceded that he possessed and gave Allen the shotgun. The jury also heard Okoniewski's testimony that, after Halverson shot him, Okoniewski saw Halverson holding a handgun. Absent resulting prejudice, we hold that the

12

absence of the first trial's closing argument transcript does not warrant a new trial. *See Burton*, 165 Wn. App. at 883.

## PROSECUTORIAL MISCONDUCT

Halverson next argues that the prosecutor committed misconduct in the second trial by misrepresenting the reasonable doubt standard and improperly shifting the burden to Halverson. Of the two alleged misstatements, one statement properly responded to Halverson's closing argument, and Halverson cannot show that the other statement, though improper, prejudiced him.

### A. Standard of Review

To prevail on a prosecutorial misconduct claim, a defendant must show that in the context of the record and all the trial circumstances, the prosecutor's conduct was improper and prejudicial. *State v. Thorgerson*, 172 Wn.2d 438, 442, 258 P.3d 43 (2011). To show prejudice, a defendant must show a substantial likelihood that the misconduct affected the jury verdict. *Thorgerson*, 172 Wn.2d at 442-43. If a defendant fails to object to misconduct at trial, he fails to preserve the issue unless he establishes that the misconduct was so flagrant and ill intentioned that an instruction would not have cured the prejudice. *Thorgerson*, 172 Wn.2d at 443. We consider the prosecutor's alleged improper conduct in the context of the total argument, the issues in the case, the evidence addressed in the argument, and the instructions given to the jury. *State v. Anderson*, 153 Wn. App. 417, 430, 220 P.3d 1273 (2009), *review denied*, 170 Wn.2d 1002 (2010). And the prosecutor's remarks, even if improper, are not grounds for reversal if they were invited or provoked by defense counsel and are in reply to her or his acts and statements. *State v. Russell*, 125 Wn.2d 24, 86, 882 P.2d 747 (1994), *cert. denied*, 514 U.S. 1129

(1995). The prosecutor, as an advocate, is entitled to fairly respond to the defense counsel's arguments. *Russell*, 125 Wn.2d at 87.

On review we focus less on whether the prosecutor's misconduct was flagrant and ill intentioned and more on whether the resulting prejudice could have been cured. *State v. Emery*, 174 Wn.2d 741, 762, 278 P.3d 653 (2012). We decide whether there is a substantial likelihood that the misconduct affected the jury's verdict. *State v. Dhaliwal*, 150 Wn.2d 559, 578, 79 P.3d 432 (2003).

## B. Analysis

Here, during rebuttal closing, the prosecutor argued: "Do you have enough to have a reasonable doubt that someone other than Danial Halverson shot Mr. Okoniewski." 6B VRP at 1016. Halverson unsuccessfully objected. The prosecutor continued without objection, "So to acquit Danial Halverson then, you have to have a reasonable doubt that Mr. Halverson was the person who shot Okoniewski. And I challenge you—I challenge you to find a reason for that doubt." 6B VRP at 1017.

The first argument that Halverson challenges on appeal responds to the defense argument that, though Okoniewski had obviously been shot just moments after Halverson admitted being at Okoniewski's house, someone other than Halverson fired the shots. 5B VRP at 953, 956. Because the prosecutor may fairly respond to arguments invited or provoked by the defense, here the prosecutor was entitled to question Halverson's theory by arguing that no evidence supported the defense's theory that someone else shot Okoniewski. Therefore, this first misconduct claim fails. *See Russell*, 125 Wn.2d at 86.

But the second argument that Halverson challenges is similar to the fill-in-the-blank arguments that improperly shift the burden to the defendant. *See Emery*, 174 Wn.2d at 759; *see also State v. Johnson*, 158 Wn. App. 677, 682, 243 P.3d 936 (2010), *review denied*, 171 Wn.2d 1013 (2011) ("To be able to find reason to doubt, you have to fill in the blank, that's your job."), *State v. Venegas*, 155 Wn. App. 507, 523, 228 P.3d 813, *review denied*, 170 Wn.2d 1003 (2010) ("In order to find the defendant not guilty, you have to say to yourselves: 'I doubt the defendant is guilty, and my reason is'—blank."), *Anderson*, 153 Wn. App. at 431 ("[I]n order to find the defendant not guilty, you have to say 'I don't believe the defendant is guilty because,' and then you have to fill in the blank.").

Here the prosecutor argued, without objection, that if the jury was to acquit Halverson it would need to find a reasonable doubt, and it needed "to find a reason for that doubt." 6B VRP at 1017. Finding a reason for a doubt is akin to filling in the blank; in *Venegas*, for example, the prosecutor argued that for the jury not to find the defendant guilty, it must find a reason to doubt: "[Y]ou have to say to yourselves: 'I doubt the defendant is guilty, and my reason is'—blank." 155 Wn. App. at 523. Both examples subvert the presumption of innocence by implying that the jury had an initial affirmative duty to convict, and that the defendant bore the burden of providing a reason for the jury not to convict. *See Johnson*, 158 Wn. App. at 684.

Because Halverson did not object to the prosecutor's second argument, he fails to preserve the issue unless he establishes that the misconduct was so flagrant and ill intentioned that an instruction would not have cured the prejudice. *Thorgerson*, 172 Wn.2d at 443. He must show that in the context of the record and all the trial circumstances, the prosecutor's conduct was improper and prejudicial. *Thorgerson*, 172 Wn.2d at 442. When like here, a prosecutor

makes a single improper remark regarding the jury's role and the burden of proof without objection, the appellant fails to demonstrate that a remedial instruction would not have cured the improper remark. *See Emery*, 174 Wn.2d at 764 (holding that improper fill-in-the-blank *and* "truth" arguments were not incurable or prejudicial). This is particularly true when, again like here, the evidence supporting the conviction was strong. We hold that Halverson fails to demonstrate prejudice.

MENTAL HEALTH COMMUNITY CUSTODY PROVISION

Halverson correctly argues, and the State concedes, that the trial court erred in ordering Halverson to submit to mental health counseling or treatment as part of his community custody. RCW 9.94B.080 provides that a sentencing court may impose a mental health counseling or treatment provision as a term of an offender's community custody sentence "if the court finds that reasonable grounds exist to believe that the offender is a mentally ill person as defined in RCW 71.24.025, and that this condition is likely to have influenced the offense."

Here the trial court ordered that Halverson "shall participate in mental health counseling or treatment at the direction of the CCO." CP at 18. But the trial court here did not enter a finding that Halverson suffers from mental illness or that mental illness contributed to his offenses. Accordingly, the trial court improperly sentenced Halverson to mental health counseling or treatment. *See* RCW 9.94B.080. We accept the State's concession and we remand to correct the judgment and sentence by striking this condition.

LEGAL FINANCIAL OBLIGATIONS

Next Halverson argues, for the first time on appeal, that the trial court erred in finding that he had a current or future ability to pay his LFOs. Following our recent case, *State v. Blazina*, 174 Wn. App. 906, 301 P.3d 492 (2013), *petition for review filed*, No. 89028-5 (Wash. July 8, 2013), we decline to reach the merits of this issue because Halverson did not object in the trial court to the trial court's finding of his ability to pay. Because like *Blazina*, Halverson challenges, for the first time on appeal, the trial court's finding of his present or future ability to pay, we decline to consider this issue.

SAG

In his SAG, Halverson raises various claims on issues relating to ineffective assistance of counsel, prosecutorial misconduct, an incomplete record, and physical trial courtroom deficiencies. Halverson fails to demonstrate reversible error.

A. Ineffective Assistance

Halverson raises various ineffective assistance claims. None warrants reversal.

1. Standard of review

To demonstrate ineffective assistance of counsel, a defendant must show that his lawyer's representation was deficient and the deficient performance prejudiced the defendant. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). Representation is deficient if it falls below an objective standard of reasonableness based on consideration of all the circumstances. *State v. McFarland*, 127 Wn.2d 322, 334-35, 899 P.2d 1251 (1995). Prejudice occurs when but for counsel's deficient performance, the result of the proceeding would have been different. *McFarland*, 127 Wn.2d at 335. If a party fails to satisfy either

prong, we need not consider both prongs. *State v. Foster*, 140 Wn. App. 266, 273, 166 P.3d 726, *review denied*, 162 Wn.2d 1007 (2007).

We are highly deferential to counsel's performance, that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. *Strickland*, 466 U.S. at 689. Tactical decisions cannot form the basis for a claim of deficient performance. *McFarland*, 127 Wn.2d at 336. Tactical decisions include selecting witnesses, conducting cross-examination, selecting jurors, making trial motions, and introducing evidence, among others. *State v. Grier*, 171 Wn.2d 17, 31, 246 P.3d 1260 (2011).

## 2. Analysis

First, Halverson claims that he suffered from ineffective assistance of counsel because, in addition to his primary trial counsel, public defender Jim Foley represented him at his first pretrial hearing; and pretrial, his case was before two commissioners and two superior court judges. Halverson does not explain how this prejudiced him. Even assuming deficient performance of some kind, absent a showing of prejudice, Halverson cannot demonstrate ineffective assistance. *See Foster*, 140 Wn. App. at 273.

Second, Halverson claims that his counsel told the trial court that counsel was not "smart" enough to handle the case and needed the appointment of another counsel, Richard Woodrow, who later withdrew before the first trial. Halverson mischaracterizes the record. Initially, defense counsel believed that Halverson may seek a mental competency defense, so he sought Woodrow's help. When Halverson opted for a more standard defense, defense counsel no longer needed Woodrow's assistance, so Woodrow withdrew. Halverson does not

demonstrate deficient performance or error; accordingly, he does not show ineffective assistance. *See Strickland*, 466 U.S. at 687.

Third, Halverson raises a series of claims relating to defense counsel's decision not to call certain witnesses including a California gunpowder expert, officers who participated in Halverson's arrest, and a woman interested in purchasing property near Halverson's. Even if we accept Halverson's summary of these witnesses' potential testimonies, their testimony would have repeated or overlapped that of other witnesses who testified. Determining which witnesses to call is a tactical matter, and here, does not constitute deficient performance. *See McFarland*, 127 Wn.2d at 336.

Fourth, Halverson raises numerous claims relating to defense counsel's presentation of evidence and his decision to elicit certain testimony from witnesses. Specifically, Halverson challenges defense counsel's decision to present different cases at the first and second trials, not offer all of Okoniewski's excited utterances after being shot, and not elicit evidence stressing the severity of Halverson's wife's illness. Again, the introduction of evidence is a tactical decision and cannot form the basis of a claim of deficient performance. *See McFarland*, 127 Wn.2d at 336. Moreover, we generally entrust witness examination techniques to the professional discretion of defense counsel because "counsel may be concerned about opening the door to damaging rebuttal or because cross[-]examination may not provide evidence useful to the defense." *In re Pers. Restraint of Brown*, 143 Wn.2d 431, 451, 21 P.3d 687 (2001).

Fifth, Halverson claims that defense counsel told him that defense counsel "had to kind of go easy in pointing out incompetence & bias of law enforcement & prosecution" because he

has to work with them every day. SAG at 1. This challenge involves material outside the record, so we are unable to address this issue on direct appeal. *McFarland*, 127 Wn.2d at 335.

### B. Misconduct

Halverson next claims that the State committed misconduct on five separate occasions. None of these claims warrants reversal.

First he claims that the State lied to get evidence suppressed when it claimed that authorities found methamphetamine-smoking paraphernalia among Halverson's possessions. The State did argue to the trial court that authorities found methamphetamine paraphernalia, but Halverson does not demonstrate that the State lied or even misrepresented the truth. Accordingly, this claim fails.

Second, Halverson claims that the State lied when it argued that Halverson's neighbors heard Halverson make derogatory remarks about Okoniewski. But neighbor Bobbie Paquette testified that Halverson said of Okoniewski, "[D]on't ask Mike for anything, he's a piece of shit." 2B VRP at 266. Because the State's argument is consistent with the evidence, Halverson's claim fails.

Third, Halverson claims that the State improperly implied that his wife was seen walking a puppy at 6:00 a.m. on the morning of the shooting, but that in reality, she walked the dog hours after authorities set up surveillance on Halverson's house. Halverson does not attempt to demonstrate how the State implied this idea, or how, if true, this implication prejudiced him. Accordingly, we decline to attempt to frame Halverson's argument for him and it fails.

Fourth, Halverson claims that because the State requested more time to rebut Halverson's opening brief on the day its brief was due, the State could not have submitted its response brief before the deadline. The State, however, received an extension to file its response, so Halverson's claim lacks merit.

Fifth, Halverson claims that the State used an incorrect map at trial. Halverson, however, never objected to its use at trial, and an objection would have resulted in curing any alleged map defect. Therefore Halverson failed to preserve this issue for appeal. RAP 2.5.

## C. Missing Record

Halverson next claims that we failed to provide him copies of voir dire proceedings from both trials. But RAP 9.2(b) provides that, "[a] verbatim report of proceedings provided at public expense will not include the voir dire examination . . . . unless so ordered by the trial court." Moreover, Halverson does not attempt to explain how lacking voir dire transcripts prejudiced him. Thus, he cannot demonstrate reversible error.

## D. Courtroom Deficiencies

Finally, Halverson claims that courtroom deficiencies prejudiced him because they distracted the jury and necessitate a new trial. Halverson also makes a blanket statement that the courtroom was unfit for technology and technology was used ineffectively and unwisely at trial. Halverson, however, never challenged the use or placement of this equipment at trial; had he objected, the trial court and parties could have cured any problem. Because Halverson failed to object, he did not preserve this issue for appeal. RAP 2.5. Had Halverson preserved the issue, he still does not demonstrate resulting prejudice.

No. 42761-3-II

We affirm Halverson's convictions, but we strike Halverson's mental health community custody condition and remand for correction of the judgment and sentence.

Johanson, A.C.J.

I concur:

Fearing, J.

22

No. 42761-3-II

QUINN-BRINTNALL, J. (concurring in part) — I concur with the majority opinion's conclusion that the public trial right does not attach to the preliminary, individual questioning of a deliberating juror about alleged misconduct, and its analysis concerning the adequacy of the record for an effective appeal, prosecutorial misconduct, and ordering mental health counseling. I also concur with the majority opinion's treatment of the issues Danial Halverson raises in his statement of additional grounds. However, for the reasons stated in *State v. Lundy*, No. 42886-5-II, 2013 WL 4104978 (Wash. Ct. App., Aug. 13, 2013), on the issue of legal financial obligations, I concur only in the result.

QUINN-BRINTNALL, J.